Wood, J.
The property was bid in, it appears, at the amount due the bank, $4,800, and taken subject, of course, to the prior incumbrances, in the aggregate, $18,452.92. There are different valuations put upon it at the time of the purchase. One witness thinks it was a poor speculation, while others range from $20,000 to $40,000. The respondent, Johnson, admits it to have been worth $27,000. It is claimed by the complainant that the first aspect of the case calls upon the court to set aside this sale. By the terms 207] of the advertisement, *it will be seen the sale was to be for cash, but when the sale was made, no cash was paid in hand, but the amount of the bid was canceled by an arrangement with the bank, a short time afteward, by which the debt covered by the trust deed was paid. There was nothing inequitable in this arrangement that we perceive. Gilbert and Johnson treated the sale as one for money. It was intended and so understood by the parties. A certificate of purchase was given by the trustee, and the amount afterward actually paid, and whether by means of a loan from the hank for that purpose, or in some other manner, is, in our opinion, of but little consequence to inquire. But if the sale was actually on a credit, when, by the notice given, cash would be required, it was, under the circumstances, at the risk of the *208 bank, and does not prejudice the rights of the complainant. It is said this was a very profitable speculation, but that is of little im. port to the complainant in the decision of this case, if made in pursuance of the deed of trust, and bona fide. A man has the right to avail himself of his moans, and to be protected in his lawful acquisitions and gains. It is said that the trustee could not lawfully sell the whole property in one lot, but the answer is, the deed conferred that power, at the discretion of the trustee; and the complainant, before and after the sale, expressed himself satisfied that it should be and had been disposed of in that way. In Johnson v. Turner, 7 Ohio, 216, pt. 2, it was decided by this court, that such sale was in accordance with the power conferred, and passed the legal title to the defendant.
The allegation in the bill, that Pumphrey and Stokely intended to bid upon the property, but left before the sale, because they understood the property was to be purchased and preserved for the complainant, is entirely unsupported. Stokely swears the reason why he did not bid upon it was, that he.was only desirous of purchasing the Huffman tract, and had not the means to buy, when he understood the whole was to be sold together. Beall Pumphrey says nothing, excepting what he was told by Stokely, which has hot any direct bearing on the final result of this controversy.
*But it is suggested, in the argument, though it does not [208 appear to be much relied upon, that these trusts connected with a loan of money, and power of sale, for non-payment, have been considered as in the nature of mortgages; and that they are, in all cases, subject to a redemption, alter sale. The clause in the deed, under which the power is conferred to sell, is in these words: “And I do expressly empower the said Charles C. Gilbert, his heirs and assigns, upon giving sixty days’ notice of the time and place of sale, in some newspaper printed in Coshocton county, to sell to the highest bidder, at public sale, for cash or credit, as my said trustee may deem best, without reserve or appraisement, all, or so much thereof, as may be necessary, of said land, either together or in lots; and of the proceeds, first to pay,” etc., with covenants of warranty, and for further assurances to the purchaser. The objects, in entering into such contracts, are readily perceivable, and must be within the full contemplation of the parties. In consideration of obtaining means, of which he could not other *209 wise avail himself, Turner makes the trust deed, with the power contained therein, and the bank advances the money; the understanding being complete that the ordinary forms of law are dispensed with, that resort to a court of equity to sell the land will not be required, and that such sale may bo made without the incumbrance of an appraisement. In fine, that the parties constitute their own court, and their own mode of proceeding. And after a sale is made, in pursuance of the power conferred, the last thing 'which could reasonably be contemplated by the party, is the assumption that there is an outstanding right of redemption in the complainant.
In this case, to hold such right exists, where no extrinsic circumstances appear to manifest such an intention between the parties, would force upon them a new contract, instead of carrying into execution the one into which they had voluntarly entered. In Eaton v. Whiting, 3 Pick. 484, it was holden by the Supreme Court of Massachusetts, that while the power to sell, in a mortgage, was unexecuted, there was a right to redeem, and it remained 209] in the mortgagor, until sale of the land, in pursuance *of the power, to a person intending to take an irredeemable estate. In 14 Peters, 19, it is said in the case of a trust deed, “that unless there is some extrinsic matter of equity, the only right of the grantor is to what surplus money may remain, after the liquidation of the debt for which the property was sold.”
Counsel, however, rely mainly on the concert between the bank by the president and G-ilbort, and the other defendants, by which this complainant was made the dupe and victim of a fraudulent and treacherous combination l The evidence is, that Silliman did not know of the sale until after it was made; that Johnson saw young Humrickhouse, and had a conversation with him, in relation to raising the money, about the time the sale was opened, and then, for the first time, concluded to bid. That Gilbert did not know that Johnson had made up his mind to purchase until the bid was made, but expected to bid it in, himself, lor the bank; and he then expected an arrangement would be made, by young Buckingham, with the bank, by which Turner would be enabled to redeem it; but he made no contract, nor gave the complainant any certain assurance to that effect. This is substantially the evidence relied upon, to sustain the case made by the pleadings, and we see nothing in it which entitles the complainant to any relief.
Bill dismissed.