[S. F. No. 6772. Department One.—January 6, 1915.]

In the Matter of the Estate of FRANK V. SILVA, Deceased. ANTONIO DA ROSA BRAZIL et al., Appellants; LUIZA ROSA SILVA, Respondent.

WILL—DOCUMENTS TESTAMENTARY IN CHARACTER.—A document reading:

"Fresno, July 2th, 1906.

"I leave all the Busines I got To my wife Luiza Rosa Silva so that she got to pai all my deads and wages of the working men and all the Bills that ivoe to be in Count ect.

"FRANK V. SILVA.

"Antone J. Breves
"Joe M. Silva."

is testamentary in character, and properly admitted to probate as the last will of the person executing the same.

ID.—INTERPRETATION OF WILL—INTESTACY TO BE AVOIDED.—A will is always to be interpreted so as to prevent intestacy if such interpretation is reasonably possible, and courts are very liberal in construing words in a will written by one unfamiliar with the English language or unused to technical terms.

ID.—CONSTRUCTION OF WORDS "LEAVE" AND "BUSINES."—The use of the word "leave" in such document is sufficient evidence of testamentary intent, and the context shows that the word "busines" was used to describe whatever property the decedent possessed. The document, as a whole, sufficiently indicates the purpose of the testator to devise and bequeath to his wife all the property that he possessed and to require her to pay all his debts.

ID.—EXECUTION OF WILL—IMPLIED REQUEST FOR ATTESTATION BY WITNESSES—PUBLICATION OF DOCUMENT AS WILL.—Due execution of the document as a will is sufficiently shown by evidence to the effect that the decedent stated that he wished to make a will, and that he asked one of the witnesses, both of whom were present, to write it; that such witness then wrote out the paper and handed it to the decedent; that decedent signed it and passed it back to the witness, who signed it as a witness, and that it was then handed to the other witness who also signed as a witness.

ID.—PUBLICATION AND REQUEST TO WITNESS INDICATED BY TESTATOR'S CONDUCT.—It is not necessary that the testator should have spoken words declaring the document to be his will, or that he should have expressly requested the witnesses to sign it as such. It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions although there is no declaration in words to that effect. It is not error, on a proceeding to revoke the probate of a will, to instruct the jury to that effect.

ID.—CONFLICT IN TESTIMONY OF SUBSCRIBING WITNESSES.—The law does not require that all the witnesses shall testify without conflict concerning the execution of the will, nor that at the time of probate both of the subscribing witnesses shall testify to all the facts necessary to constitute a statutory execution thereof.

ID.—REVOCATION OF WILL—HOW MUST BE MANIFESTED.—Under section 1292 of the Civil Code, no written will can be revoked except, (1) by a writing of the testator declaring such revocation, executed with the same formalities as a will; or, (2) "by being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction."

ID.—INSUFFICIENT ALLEGATIONS TO SHOW REVOCATION—UNFULFILLED DIRECTIONS TO DESTROY.—Allegations in a petition to revoke the probate of a will to the effect that the wife of the testator, after the execution of the will, was requested by him to destroy it; that thereupon, in his presence, she did destroy an envelope, falsely declaring to him at the time that the will was inclosed therein; that the decedent then and until his death believed that the will was in the envelope, and was then destroyed by burning, when in fact some other paper was inclosed therein; that the will was not destroyed or burned, and that all this was done by the wife for the purpose of deceiving the testator and securing to herself the property left her by the will, do not show a revocation of the will, under section 1292 of the Civil Code.

ID.—JOINT UNION OF ACT AND INTENT TO DESTROY ESSENTIAL.—In order to constitute such revocation, there must be an actual burning, tearing, canceling, obliteration, or destruction, with the intention to

revoke the document as a will. The mere intent unperformed to destroy or burn the will is not sufficient. There must be a joint union of act and intent in order to accomplish the revocation.

ID.—FRAUDULENT PREVENTION OF REVOCATION—RELIEF FOR, HOW OBTAINED—NOT GROUND FOR REVOCATION OF PROBATE.—In a proceeding under the statute for the revocation of the probate of a will, the court cannot give relief for a fraudulent prevention of a revocation of the will. The statute does not provide for the presentation of such an issue as ground for revoking the admission to probate. If relief can be given at all for such a wrong, it must be sought by, suit in equity to declare the wrongdoer a trustee for the heirs with respect to the property received by such wrongdoer in virtue of the will.

ID.—SIGNING OF WILL BY TESTATOR AND WITNESSES—ORDER IMMATERIAL.—To effect the due execution of a will, it is immaterial whether the testator signed his name before or after the witnesses signed their names to the document executed as a will, if all the parties signed it at the same time, and as a part of the same transaction. The statute does not make the order of signing material.

APPEAL from an order of the Superior Court of Fresno County refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, and H. P. Brown, for Appellants.

James Gallagher, and M. B. & E. M. Harris, for Respondent.

SHAW, J.—The decedent, Frank V. Silva, died on March 22, 1912. On April 22, 1912, an order was made admitting a certain document to probate as his last will. Thereafter, within the time here allowed by law, the appellants filed a petition for the revocation of the probate of the will. After trial the court denied the revocation, the appellants moved for a new trial and the court thereupon denied the motion. From this order the petitioners appeal. The decedent left no issue. The appellants are his brothers and sisters.

The first point made in support of the appeal is that the document admitted to probate is not testamentary in character. The following is a copy of the paper:

"Fresno, July 2th, 1906.

"I leave all the Busines I got To my wife Luiza Rosa Silva so that she got to pai all my deads and wages of the working men and all the Bills that ivoe to be in Count ect.

"FRANK V. SILVA.

"ANTONE J. BREVES

"JOE M. SILVA."

The appellants claim that the instrument does not describe any property nor in any way refer to property so as to constitute a disposition thereof. We think, however, that this contention cannot be sustained. A will is always to be interpreted so as to prevent intestacy if such interpretation is reasonably possible. (Civ. Code, sec. 1326.) The courts are very liberal in construing words in a will written by one unfamiliar with the English language or unused to technical terms. (*Mitchell* v. *Donohue*, 100 Cal. 208, [38 Am. St. Rep 279, 34 Pac. 614].) At the time this document was executed the decedent was very sick and evidently believed that he would not live long. He announced his desire to make a will, and of those present only Antone J. Breves was able to write English. All of them were Portuguese, unfamiliar with English. The decedent explained his intention to Breves, who thereupon prepared the above document. The use of the word "leave" is sufficient evidence of testamentary intent. The argument of the appellants is that the word "busines" cannot by any reasonable construction be held to refer to property. The context shows that it was used to describe whatever property the decedent at that time possessed. Taking the document as a whole, it sufficiently indicates the purpose of the testator to devise and bequeath to his wife all the property that he possessed and to require her to pay all his debts. Antone J. Breves testified that the word "deads" was his mode of spelling the word debts, that the word written "ivoe" was his method of writing the expression "I owe" and that by the words "in Count" he meant account. Whether these explanations were proper and competent or not we need not consider, for without them, in the light of the attending circumstances, the will should be given effect as if the words so used by him were properly written as he states they were intended to be.

The appellants next claim that there is no sufficient evidence of the execution of the document as a will. There was

testimony to the effect that the decedent stated that he wished to make a will and that he asked Antone J. Breves to write it, that Breves then wrote out the paper and handed it to the decedent, that decedent signed it and passed it back to Breves, who signed it as a witness, and that it was then handed to Joe M. Silva, who also signed as a witness. It does not appear that the testator in words asked that these persons sign as witnesses or declared to them that the document was his will, but from the whole transaction as shown by the testimony it is very clear that all of them understood that he was promulgating the document as his will, that he desired these persons to sign the same as witnesses and that they were signing in compliance with his desire so manifested by his manner and actions.

It is not necessary that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such. It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions, although there is no declaration in words to that effect. The testimony leaves no doubt that the testator signed the document as his will, that he gave all persons present to understand that it was his will and that he desired the subscribing witnesses to attest the same for the purpose of constituting it a will. Nothing more on this point is required by the statute. There is, it is true, much confusion and conflict in the testimony of the several witnesses with regard to the occurrences at the time of the execution of the will. This is not surprising and indeed it was to be expected, since the persons present were called upon to testify in regard to the facts six years after they occurred. The law does not require that all the witnesses shall testify without conflict concerning the execution of the will, nor that at the time of probate both of the subscribing witnesses shall testify to all the facts necessary to constitute a statutory execution thereof. There was sufficient evidence given to support the conclusion of the court that the facts occurred as above stated. There is, therefore, sufficient evidence to support the finding that the will was duly executed.

The appellants further claim that the court erred in refusing to admit evidence that the will was subsequently revoked. The evidence was properly rejected. The allegations of the

appellants in their petition for revocation of probate were insufficient to justify the admission of evidence tending to show revocation. The code provides that no written will can be revoked except, first, by a writing of the testator declaring such revocation, executed with the same formalities as a will, or second, "by being burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction." (Civ. Code, sec. 1292.) The allegations of the petition for revocation were to the effect that the wife of the decedent, respondent herein, some time after the execution of this will, was requested by the decedent to destroy the same, that thereupon in his presence she did destroy an envelope, declaring to the decedent at the time that the will was inclosed therein, that the decedent then believed that the said will was in the envelope and was then destroyed by burning the same, that from that time forward until his death he continued to believe that the said will had been destroyed, that in fact some other paper was inclosed in said envelope, that the will aforesaid was not destroyed or burned, and that all this was done by the said respondent for the purpose of deceiving the decedent and securing to herself the property left to her by said document. These acts did not, under the statutory provisions aforesaid, constitute a revocation of the will. In order to constitute such revocation, there must be an actual burning, tearing, canceling, obliteration, or destruction, with the intention to revoke the document as a will. The mere intent unperformed, to destroy or burn the will, is not sufficient. There must be a joint union of act and intent in order to accomplish the revocation. (*Estate of Olmstead,* 122 Cal. 229, [54 Pac. 745]; 1 Underhill on Wills, secs. 223-226; *Boyd* v. *Cook,* 3 Leigh (Va.), 32; *Kent* v. *Mahaffey,* 10 Ohio St. 204; *Hise* v. *Fincher,* 32 N. C. 139, [51 Am. Dec. 383]; *Clingan* v. *Mitchell-tree,* 31 Pa. St. 25; *Mundy* v. *Mundy,* 15 N. J. Eq. 290.) The decisions in other states having no statute similar to section 1292 of our Civil Code are inapplicable here. (*In re Comassi,* 107 Cal. 5, [28 L. R. A. 414, 40 Pac. 15].) Inasmuch as there was no allegation to show revocation, it was not error to refuse evidence in support thereof.

In a proceeding under the statute for the revocation of the probate of a will, the court cannot give relief for a fraudulent

prevention of a revocation of the will. The statute does not provide for the presentation of such an issue as ground for revoking the admission to probate. If relief can be given at all for such a wrong it must be sought by suit in equity to declare the wrongdoer a trustee for the heirs with respect to the property received by such wrongdoer in virtue of the will. (1 Underhill on Wills, sec. 153.)

The last point urged by the appellants is that the court erred in giving the following instruction:

"The court instructs you that it is not necessary that a testator should in words say that an instrument is his will or request the subscribing witnesses thereto to witness the same as such. Such statement and request on the part of the testator may be indicated by his manner, conduct or demeanor."

We see no error in this instruction. It is in accord with the law on the subject as we understand and have stated it to be. It was not error for the court to instruct the jury that it was immaterial whether the testator signed his name before or after the witnesses signed their names to the document executed as a will, if it appeared that all the parties signed it at the same time and as a part of the same transaction. The statute does not make the order of signing material. We find no other objections worthy of consideration.

The order denying a new trial is affirmed.

Sloss, J., and Angellotti, C. J., concurred.