[Civ. No. 12853.  First Dist., Div. One.  July 31, 1945.]

Estate of DANIEL W. LYNCH, Deceased.  MARY LYNCH et al., Respondents, v. AGNES G. BELL, as Executrix, etc., Appellant.

Waldo F. Postel for Appellant.

Milton Marks and Morris Lowenthal for Respondents.

KNIGHT, J.—Daniel W. Lynch died March 17, 1944, leaving a witnessed will dated May, 1940, which was offered for probate. He was unmarried and was survived by a mother, Mary Lynch, six brothers and two sisters. By the terms of his will he devised and bequeathed his entire estate in equal undivided shares to four of his brothers, his mother Mary (erroneously described in the will as a "sister"), and a friend, Agnes G. Smith. The will named Agnes G. Smith (now Agnes G. Bell) as executrix, and she petitioned for the probate of the will. The mother and four of the brothers, two of whom were named as beneficiaries in the will, filed a contest to the will on three grounds, the first being that the will was not executed in conformity with the requirements of the law of this state. After hearing the evidence the probate court so found, and denied the petition for probate. Agnes G. Bell

appeals. It is evident that the decision of the probate court is fully supported by the law and the facts.

Section 1276 of the Civil Code as it stood prior to the adoption of the Probate Code in 1931 embodied four subdivisions. By the first it was provided that a witnessed will "must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto"; subdivision 2 provided: "The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority"; and subdivision 3 provided: "The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will. . . ." The construction placed by the courts upon the foregoing provisions was that if neither the subscription nor the acknowledgment was made before two witnesses, both present at the same time, it was not executed with the formality required by section 1276 of the Civil Code. (*Estate of Lawrence,* 196 Cal. 321 [237 P. 738].) In so holding the court in that case said: "It therefore appears that neither the subcription nor the acknowledgment of the decedent took place before two witnesses present at the same time. The precise question was presented in *Estate of Emart,* 175 Cal. 238, 244 [L.R.A. 1917F, 866, 165 P. 707], where this court construed the language of section 1276 of the Civil Code, reviewed the history of the legislation on the subject, and said: 'From the language of our statute and this review of its history, we regard the conclusion as unescapable that our law requires the subscription or the acknowledgment to be before the two witnesses present at the same time.'

"The appellant contends that in *Estate of Dow,* 181 Cal. 106 [183 P. 794], this court, in the opinion on rehearing, so far discredited the decision in *Estate of Emart, supra,* as to render the point involved herein an open one. Such was not the case. In *Estate of Dow, supra,* the will was subscribed and acknowledged in the presence of both witnesses but the witnesses did not sign the document in the presence of each other. It was held that, under the statute, the witnesses need not sign in the presence of each other. The distinction is pointed out by the court in the opinion on rehearing in that case.

"On the authority of *Estate of Emart, supra,* the judgment is affirmed."

In 1931 section 1276 of the Civil Code was reenacted into section 50 of the Probate Code. Some modifications, not material here, were made to subdivisions 1 and 4; but subdivisions 2 and 3, upon which the decisions in the Lawrence and Emart cases were based, were reenacted in the same form except that the words "present at the same time" were added to subdivision 2, so that as reenacted it is made to read: "The subscription must be made, or the testator must acknowledge it to have been made by him or by his authority, in the presence of both of the attesting witnesses, *present at the same time."* (Italics ours.) And the obvious purpose of adding the italicized words was to make the new section harmonize with the construction theretofore placed by the courts on section 1276. Subsequent to the adoption of the Probate Code another case (*Estate of Krause,* 18 Cal.2d 623 [117 P.2d 1]) arose involving a will executed prior to the adoption of the Probate Code; and the construction placed by the earlier cases on subdivisions 2 and 3 of section 1276 was confirmed and applied. In that case the court said: "The law requires the subscription or acknowledgment to be made before the two witnesses present at the same time, and where this requirement is not met, the instrument must be denied probate (*Estate of Emart,* 175 Cal. 238 [165 P. 707, L.R.A. 1917F, 866] ; *Estate of Lawrence,* 196 Cal. 321 [237 P. 738])." From the foregoing it will be seen that the law as declared in the three cases last mentioned is controlling in similar cases arising under section 50 of the Probate Code.

Here the two witnesses to the will were Miss Dorothy Kelly and J. W. Welch, and their testimony as to the circumstances attending the signing of the will is conflicting. The testimony given by Miss Kelly affirmatively shows that neither the subscription nor the acknowledgment of the decedent was made in the presence of both witnesses, present at the same time; and since the probate court accepted her testimony as true, it must be so considered for all the purposes of this appeal.

The following are among the facts established thereby : The decedent was a member of the firm of Lynch & Sons, with offices on upper Market Street in San Francisco, and Miss Kelly had been in his employ as secretary for upwards of five years. Welch was an insurance salesman and transacted considerable business with the decedent. He called to see the

decedent at his office at least twice a month, and Miss Kelly was well acquainted with him. The decedent and Miss Kelly occupied different desks on opposite sides of the same room, a considerable distance apart. Each desk faced a wall so that while they were seated at them their backs were toward each other. On the day in question Welch entered the room, greeted Miss Kelly and walked over to the decedent's desk. She observed that they "were either looking at a paper or signing some paper" and that some conversation was being carried on between them; but she did not know the nature of the business they were transacting nor did she hear any part of the conversation. She stated that she was busy with her duties and paid no attention to it. Welch remained only a short time and then left the room, closing the door behind him. After he had gone the decedent walked over to her desk, and laid the document on her desk before her. The first page was folded under, and he said: "Will you sign here, Dorothy?" She asked him what it was, and he replied, "Sign here." Noting that the document had been signed by the decedent and Welch, she signed it as directed. Thereupon, so she testified, the decedent picked up the document "in a sort of joking manner and said, 'This is my will' ''; and that he then walked over and put it in the file. The distance to the file from Miss Kelly's desk was about fifteen feet. Part of the testimony so given by the witness was as follows: "Q. Before you signed was anything said to the effect that what these men were signing was a Will? A. No. Q. Was the word 'Will' uttered by anybody in that room before you signed? A. No, I had no idea what was going on at all, I didn't hear it. Q. You had no idea? A. No. Q. And is it not a fact that the first knowledge that you had that it was a Will was after you had signed it? A. That is true, when he told me. Q. Then Mr. Lynch told you? A. Yes. Q. And when Mr. Lynch told you that, after you had signed, Mr. Welch had already gone? A. Yes." From the foregoing it will be seen that the situation here presented has been brought clearly within the holding of the cases above cited.

Nor does the fact that Miss Kelly was present in the room at the time that the decedent and Welch signed the will alter the legal aspect of the case, for it is well settled that the phrase "in the presence of" as used in the law of wills means conscious presence and not merely the actual physical presence where the party has no realization of what is going on.

(*Chappell* v. *Trent*, 90 Va. 849 [19 S.E. 314] ; *Aikin* v. *Weckerly*, 19 Mich. 482; *Watson* v. *Pipes*, 32 Miss. 451; *Baldwin* v. *Baldwin's Executor*, 81 Va. 405 [59 Am.Rep. 669].) In short, the phrase ''in the presence of'' is not synonymous with ''being in the same room.'' (*Reed* v. *Roberts*, 26 Ga. 294 [71 Am.Dec. 210].) As said in Page on Wills (vol. 1, p. 640) : ''A person in whose presence an act is done must be informed of what is taking place so that he actually knows what is being done; or the act is not done in his presence, no matter how close to him it may be done. A will is not signed in the presence of one who is attending to another matter and does not know what is taking place until he is told later.''

And so in this state it has been held that both witnesses must not only be actually present when the subscription is made or the testator acknowledges it to have been made by him or by his authority, but it must be ''unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions'' that it is his will, although no particular verbal formula need be followed. (*Estate of Silva,* 169 Cal. 116 [145 P. 1015] ; *Estate of Cullberg,* 169 Cal. 365 [146 P. 888] ; *Estate of Johnson,* 100 Cal.App. 676 [280 P. 987].) In other words, the circumstances attending the transaction must show that the decedent must have intended to have the witnesses know that the writing was his will. (*Estate of Cullberg, supra;* 26 Cal.Jur. 781.) In *Estate of Norswing,* 47 Cal.App.2d 730 [118 P.2d 858], one of the attesting witnesses testified that he did not know that the instrument he was signing was intended as a will, in spite of the fact that it had the word ''Will'' written at the top of it, and the witness could have read the attestation clause. It was there held (p. 733) : ''It is essential, however, that each of the witnesses shall understand that the testator was promulgating the document as his will. (*Estate of Silva, supra; Estate of Johnson,* 100 Cal.App. 676 [280 P. 987] )''; and that in that case there was ''no evidence of acts or conduct on the part of the decedent which required a finding that the nature of this instrument was unmistakably indicated to this witness.''

In the present case, although it appears that Miss Kelly was in the room when the document was signed by the decedent and Welch, she positively and unequivocally testified that she was wholly unaware of the nature of the transaction that was taking place between them; and that it was not indicated to her that the instrument was a will until after she had

signed it, and that at that time the other witness was not present but had left the premises.

Briefly, Welch's testimony was that he brought the unsigned document to the decedent's office and stated to him, "Here is your last will and testament"; that the decedent then signed the document in the presence of himself and Miss Kelly and said, "This is my last will and testament"; that thereupon he, Welch, and Miss Kelly signed as witnesses in the decedent's presence and in the presence of each other; and that he, Welch, then left the room. It is evident, however, that since Welch's testimony was rejected by the probate court the most that can be said for it on appeal is that it merely raised a conflict in the evidence.

The remaining points consist of technical objections to matters of pleading and procedure. In this connection it is contended that the general allegation that the will was not executed by the decedent in the manner or form required by law for the execution of a will is a conclusion of law and that therefore such allegation and the general finding based thereon are insufficient to support the judgment; furthermore that it cannot be determined from the findings or the judgment upon what specific ground the will was denied probate. It appears from the record, however, that appellant expressly waived the right to file a demurrer to the contest and requested that the trial proceed without delay on the pleading as filed and appellant's answer thereto, which she had already filed; also that at no time during the trial did appellant complain of any insufficiency in the pleading. Moreover the record shows that at the trial all parties understood that the only contested issue before the probate court as to the validity of the will was the one hereinabove discussed, and all of the evidence was directed to that issue. Such being the state of the record, it is our opinion that the objections raised by appellant do not serve as grounds for reversal.

Appellant's next contention is that the contest was tried on the merits; that it was not merely the hearing of the "preliminary proof"; that being a trial on the merits of the contest the burden of proof to establish the invalidity of the will rested on the respondents; that they offered no evidence, and that such being the case judgment should have been entered dismissing the contest. It is entirely immaterial, however, whether the proceeding before the probate court was

a hearing of the ''preliminary proof'' or a trial of the merits of the contest; and it is likewise immaterial upon whom the burden of proof rested, for the reason that both subscribing witnesses were produced in court and testified as witnesses in the case; and it clearly appeared from the testimony of one of them that the will was not executed in conformity with the legal requirements; that being so, it was the plain duty of the court to deny the petition for the probate of the will.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.