[Civ. No. 6815. Fourth Dist. June 4, 1962.]

Estate of HERBERT L. McKAGUE, Deceased. KENNETH L. McKAGUE et al., Contestants and Appellants, v. BERTHA HUNTER et al., Respondents.

James E. Walker for Contestants and Appellants.

Arthur M. Bradley for Respondents.

SHEPARD, Acting P. J.—This is an appeal by contestants from a judgment admitting to probate the will of the above-named deceased.

FACTS

The facts shown by the record are without substantial conflict. Herbert L. McKague was in the hospital. His doctors

advised surgery of a serious character. He asked to make his will and that Mrs. Bertha Hunter, in whose home he stayed, be called to take care of this. One of the nurses called Mrs. Hunter. Mrs. Hunter came to the hospital accompanied by Mrs. Ruby H. Weaver. The room in which McKague's bed was located was a three-bed ward, about 16 by 20 feet in size. One other patient was in the ward, in the bed next to McKague's. The usual bed curtain separated vision from between the two beds but did not extend across the foot of the bed.

From arrival to completion of will, Mrs. Weaver, Mrs. Hunter and McKague were in each other's presence at all times. McKague requested Mrs. Hunter to write his will. At his dictation she did so. During part or possibly all of the dictation, Dwight O. Birch, a hospital orderly, was attending the patient in the next bed and overheard the dictation. He realized that McKague was dictating a will. Exactly how much of the conversation and dictation he overheard is not disclosed by testimony. When the writing was complete, McKague wrote at the end, "Signed by me, Herbert L. McKague." He told Mrs. Weaver that it was his will and asked her to sign as a witness. She did so. McKague then said he needed another witness. Birch came around the foot of the bed. Birch did not see either McKague or Weaver sign. Birch testified, "Well, as I came around the curtain, Mr. McKague asked me to sign the Will." Mrs. Hunter testified McKague said to Birch, "Will you sign my Will?" but that McKague did not make any formal declaration that this "was his last Will" nor "that he had signed it." Birch then signed as a witness and all the witnesses were ushered out and preparations for surgery instituted. McKague died some hours later, after surgery.

The will was presented for probate, the contest was filed and answered, trial was had, developing the above facts, judgment was rendered admitting the will to probate, motion for a new trial was made and denied and this appeal was taken by contestants. The sole ground of contest was that "said document was not executed by decedent or attested in the manner and form required by law for the execution of a will."

### ACKNOWLEDGMENT BY DECEDENT

Appellants first contend that decedent did not acknowledge the instrument to Birch as required by Probate Code section 50, subdivision (2). With this we cannot agree. The para-

graph cited reads as follows, "The subscription must be made, *or* the testator must acknowledge it to have been made by him or by his authority, in the presence of both of the attesting witnesses, present at the same time." (Italics ours.)

In the case at bar there is no question that all signatures are genuine and that the will is in the form required by law. Witness Birch overheard the dictation of the will by decedent. Decedent referred to the instrument, while both witnesses were present together as "my will." The entire circumstances, with the words of decedent, could convey no other meaning to either witness than that decedent was declaring to them that this was his signature, that he had signed it as his will and that he requested each of them to sign as witnesses to that fact.

In *Estate of Tyler*, 121 Cal. 405 [53 P. 928], wherein there was no formal attestation clause, one witness was dead and the other not remembering some of the essentials, but all signatures being verified as genuine, our Supreme Court, after analyzing the whole problem, concluded that the presumption of due execution, under such circumstances, supports such a finding by the trial court, regardless of the absence of a formal attestation clause. In *Estate of Kent*, 161 Cal. 142 [118 P. 523], under somewhat similar circumstances, the presumption of due execution was used to reverse the trial court's refusal to admit the will to probate. In *Estate of Pitcairn*, 6 Cal.2d 730, 732 [2] [59 P.2d 90], in which one witness could go no further than to state that she was asked to sign "a piece of paper," not having been in the room at the time testatrix signed, our Supreme Court again reviews the same problem and reaffirms the presumption of due execution in affirming admission of the will to probate, quoting, at page 733, with approval the reasoning of the Missouri Supreme Court in the following words, "In other words, by subscribing the will the attesting witnesses *impliedly* vouch for its due execution as fully or as broadly as they would do expressly if there were a complete attestation clause, though, perhaps, with less force and emphasis."

This presumption is also recognized under various circumstances, all having partial or full analogy to the case at bar. (*Estate of Gray*, 75 Cal.App.2d 386, 391-392 [3] [171 P.2d 113]; *Estate of Braue*, 45 Cal.App.2d 502, 505 [1a] [114 P.2d 386]; *Estate of Gray*, 89 Cal.App.2d 478, 485 [5] [201 P.2d 392]; and *Estate of Gill*, 111 Cal.App.2d 486, 488 [3] [244 P.2d 724].)

The authorities cited by appellants state no contrary rule. *Estate of Krause,* 18 Cal.2d 623 [117 P.2d 1] involved the signing of a paper the body of which was concealed by folding, with no statement that it was a will and no acknowledgment whatever by testatrix. In *Estate of Emart,* 175 Cal. 238 [165 P. 707], one witness signed in the forenoon and one in the afternoon and the testatrix *neither* signed nor acknowledged with both witnesses present. The basis of the *Emart* decision is pointed out in *Estate of Dow,* 181 Cal. 106 [183 P. 794] at page 114. *Estate of Lawrence,* 196 Cal. 321 [237 P. 738], and *Estate of Jianitos,* 102 Cal.App.2d 736 [228 P.2d 60], likewise lacked the presence of both witnesses at signing or acknowledgment by testator.

## DECLARATION OF TESTATOR

 Next, appellants contend that decedent did not declare to Birch that the instrument was his will. We find no merit in this contention. Probate Code section 50, Subdivision (3) reads as follows: "The testator, at the time of subscribing or acknowledging the instrument, must declare to the attesting witnesses that it is his will."

Here the testator clearly and unequivocally asked each witness to sign "my will." Each witness had heard the will dictated and already knew the testator's intention. Both witnesses were in the room together when the testator asked Birch to sign. There was no reasonable possibility of misunderstanding of the testator's intent by either witness. As was said in *Estate of Silva,* 169 Cal. 116 [145 P. 1015] at page 120, "It does not appear that the testator in words asked that these persons sign as witnesses or declared to them that the document was his will, but from the whole transaction as shown by the testimony it is very clear that all of them understood that he was promulgating the document as his will, that he desired these persons to sign the same as witnesses and that they were signing in compliance with his desire so manifested by his manner and actions.

"It is not necessary that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such. It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions, although there is no declaration in words to that effect." (See also *Estate of Abbey,* 183 Cal. 524 [191

P. 893], and *Estate of Norswing,* 47 Cal.App.2d 730, 733 [2] [118 P.2d 858].)

Under circumstances similar to those here present, the question of due execution of the will is generally considered one of fact for the trial court. (*Estate of Pelton,* 140 Cal.App.2d 512, 516 [3] [295 P.2d 483]; *Estate of Fletcher,* 50 Cal.2d 317, 320 [5] [325 P.2d 103].)

*Estate of Norswing,* 47 Cal.App.2d 730 [118 P.2d 858], *Estate of Lynch,* 70 Cal.App.2d 392 [161 P.2d 24], and *Estate of Emden,* 87 Cal.App.2d 115 [196 P.2d 627], cited by appellants, enunciate no rules of law in conflict with any of the foregoing discussions. In the *Norswing* case one witness knew nothing of what was intended. In the *Lynch* case both witnesses were not present at acknowledgment or signature by testator. The *Emden* case turned on disputed questions of fact resolved by the trial court.

The judgment is affirmed.

Coughlin, J., concurred.