Sue MORRIS, Appellant,

v.

Michael Lee MORRIS, et al, Appellees.

No. 1478.

Court of Appeals of Texas, Tyler.

Feb. 25, 1982.

Rehearing Denied April 8, 1982.

Bill D. Rosenstein, Stephens, Corn & Rosenstein, Tyler, for appellant.

Thomas H. Hight, Sr., Hight & Hight, Dallas, for appellees.

McKAY, Justice.

This is a will contest. Appellant Sue Morris made application for probate of the will of Floyd Lee Morris, Sr., decedent, and for letters testamentary. Michael Lee Morris and Gerald Ray Morris, appellees and sons of decedent, filed a contest to such application to probate. After trial before a jury, which found the will had been revoked, judgment was rendered for appellees.

Appellees alleged in their contest that appellant, together with her attorney, Melvin Whitaker, and his secretarial help, Vicki Blackstone, subverted and subjugated the will of deceased by overreaching and subjecting him to pressure and influence while he was ill and in weakened condition, thereby depriving deceased of his right to the expression of his will to the objects of his bounty by forcing him to submit to the persuasions and control of the several parties. It was further alleged that Whitaker and Blackstone caused deceased to be deprived of his will by their actions in preparing and witnessing an instrument as his last will and testament when they knew he was ill, without testamentary capacity, and unduly influenced by their actions. There was a further allegation that the signature on the will did not appear to be that of the decedent, that the will was not properly

attested, that it was without competent witnesses, not testamentary, and that deceased took steps to revoke the will.

The jury found (1) that deceased had testamentary capacity at the time he executed the will, (2) that he understood the provisions of the will, but (3) he did revoke the will. The trial court denied admission of the will for probate.

Appellant argues her first three points of error together. Appellant complains that the trial court erred in overruling her motion to find as a matter of law that the will had not been revoked because the will was established prima facie with no suspicion cast upon its original execution, and there was no evidence to rebut the presumption that said will had not been revoked nor evidence that it was revoked in accordance with the provisions of section 63 of the Probate Code. Appellant further asserts the trial court erred in submitting issue three in that there was no evidence to rebut the presumption that testator had not revoked his will because the evidence offered by her showed the execution of the will without suspicion being cast upon its execution and there is no evidence that the will was destroyed or revoked. In point three appellant also says the trial court erred in failing to disregard the answer to issue three and in not granting her motion for judgment n. o. v. because there was no evidence that the will was revoked by a subsequent will, codicil or declaration in writing executed with like formalities, nor by destruction or cancellation of the will.

In answer to the first two issues the jury found that Floyd Lee Morris, Sr., had testamentary capacity and that he understood the provisions of the will at the time it was executed. The question presented to us is how may a will be revoked.

The testimony about revocation of the will came from witness Georgia Marguerite Morris Weaver as follows:

Q. But on this occasion when you came in the early part of January of '75, where did you stay?

A. His home because he told me to come. He invited me to come to his home.

Q. About what time of day or night did you arrive?

A. I arrived there about ten p. m. one night.

Q. And where was he and where was Sue?

A. They were in bed.

Q. They had retired for the night?

A. Yes.

Q. They were in the bed?

A. They were in bed.

Q. And what did you do then?

A. Well, I bent down and kissed him on the cheek and he said, "Lay down on the foot of the bed. I know you're tired."

Q. You were all there in bed together?

A. Yeah. Yeah.

Q. They were laying on the bed in a normal way and you were cross ways?

A. He was on the right hand side of the bed. Sue was on the left and I was down at the foot of the bed.

Q. All right. Did he have anything to say to you about a will at that time?

A. Yes.

Q. What did he say, please?

A. He said, "I was supposed to have signed a will at the hospital in Tyler, Texas." And Sue made the remark, said, "He left me completely out in the cold." Said, "He didn't even leave a roof over my head. Everything he left was to Lee Morris." That's the youngest son. And he said, "Sue, get that will. I want Mutt [referring to witness Weaver] to read it. Then I want to see it destroyed."

Q. Okay.

A. So I was laying on the foot of the bed and she stepped into the next bedroom. Her purse was laying by the door. She picked up this business like envelope and I just reached up for that and she said, "I have

heard so damn much about this will since you signed it until I will destroy it for you right now." He said, "Well, I demand it."

Q. He said what?

A. I demand it.

Q. I demand what?

A. That you destroy that will.

Q. All right. What Happened?

A. And she tore up this envelope into shreds and walked out into the hall way of their bedroom and went down the hall. And when she came back, she said, "Well, I'm going to bed in the next room and I'm going to get me sleep." And Floyd Lee said, "Well, let's lay here and we'll talk, you know, more." And after she had gone to sleep he told me, said, "I'm going to catch hell for this but it's something that I had to do."

Texas Probate Code, § 63, provides: "No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, or by the testator destroying or canceling the same, or *causing it to be done in his presence.*" (Emphasis added.)

■ Texas courts have long held that the statutory method of revoking a will is exclusive. *Brackenridge v. Roberts*, 114 Tex. 418, 267 S.W. 244, 247 (Tex.1924); *Morgan v. Davenport*, 60 Tex. 230, 237 (1883); *Halamicek v. Halamicek*, 542 S.W.2d 246, 248 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Covington v. McDonald*, 307 S.W.2d 335, 337 (Tex.Civ.App.—Texarkana 1957, no writ); *Aschenbeck v. Aschenbeck*, 62 S.W.2d 326, 327 (Tex.Civ.App.—Austin 1933, writ dism'd).

■ It is apparent from the record that the will of Floyd Lee Morris, Sr., was not revoked by destruction by its maker, nor was it caused to be destroyed in his presence. The destruction of an envelope by Sue Morris obviously did not destroy the will, nor did it revoke the will even though the testator may have believed that his will had been destroyed.

The general rule on destruction of a will by one other than the testator is found in 95 C.J.S. *Wills* § 280 (1957). "A mere direction to another to destroy a will, not followed by actual destruction, will not effect a revocation. It is not enough that the testator believes the will to have been destroyed as directed..." Similar language is found in 61 Tex.Jur.2d *Wills* § 90 (1964):

A written will may be revoked in whole or in part only by the testator's destroying or canceling it or causing its destruction or cancellation in his presence, or by the execution .... of a subsequent will, codicil or written declaration. The provision authorizing revocation of a will is mandatory, clear, and explicit, and since it is also exclusive in application, a will may be revoked in no other way than those prescribed.

The case of *Sien v. Beitel*, 289 S.W. 1057, 1058 (Tex.Civ.App.—San Antonio 1927, no writ) contains the following language:

Here its [the will's] destruction is sought to be shown; that he [the testator] caused it to be done (by Mrs. Cooper) in his presence. She did not do as requested nor as she promised. Under this statute, which is wise and means something, in such a case the destruction must occur in his very presence. She by her act defeated his purpose and left undestroyed and still in existence his last will and testament—the will it is claimed he desired destroyed. The law in reference to the destruction of wills cannot be so affected and defeated. A will once executed in accordance with law cannot be revoked, except it follows the rules prescribed by the express terms of the law ....

It is said in *Howard v. Combs*, 113 S.W.2d 221, 225 (Tex.Civ.App.—Fort Worth 1938, no writ), "The statement of testatrix that she had destroyed the will, standing alone, was not a sufficient revocation, for it did not meet the conditions of the ... statute ...."

Other jurisdictions follow the above rule. See *Perschbacher v. Moseley*, 75 N.M. 252, 403 P.2d 693, 695 (1965) and *In re Silva's*

*Estate,* 169 Cal. 116, 145 P. 1015, 1017 (1915).

We hold that the will of December 25, 1974, of Floyd Lee Morris, Sr., was not revoked by the purported destruction of it by Sue Morris.

Appellant asserts in point four and five that the trial court erred in its instruction given to the jury in connection with issue three. We sustain these points.

Issue three inquired of the jury whether Floyd Lee Morris, Sr., revoked the will dated December 25, 1974. The jury answered, "He did revoke the will." The trial court instructed the jury in the statutory language how a will may be revoked, but then added the following:

> You are further instructed that if Sue Morris was directed by Floyd Lee Morris to destroy the will dated December 25, 1974, in his presence, and at a time when he had testamentary capacity, as heretofore defined, and if Sue Morris did then destroy an instrument in the presence of Floyd Lee Morris, Sr. which she stated was the will of December 25, 1974, thereby leading him to believe that he had caused the will dated December 25, 1974, to be revoked, then Floyd Lee Morris, Sr. did effectively revoke the will in question.

In our view the above instruction is erroneous, and was calculated to cause the jury to come to an erroneous conclusion that the will had been revoked. As pointed out hereinbefore, the statute must be followed explicitly, and the testator's belief that he had caused his will to be destroyed is not sufficient for revocation.

Appellees argue that the testator did everything the statute required him to do to effect the revocation of his will, and that a holding that subverts a testator's intent is a construction of the statute which reaches a harsh and unjust result. Since the statutory method of revoking a will in Texas is exclusive it was the duty of the testator to personally see that his will was destroyed in his presence. That he did not do. The intent of the testator does not control nor supersede the explicit language of the stat-

ute since the will was produced in court in an unmarked and unmutilated condition. *Covington v. McDonald, supra* at 337.

A number of authorities from other states are cited by appellees but it is our view that the statute and the Texas authorities, based upon the facts of this case, compel a conclusion that the will in question here was not revoked. Appellant as proponent met her burden of proving that the will was valid and unrevoked.

◼ It is the further position of appellees that appellant is estopped by her fraudulent conduct to assert that the will was not revoked or to offer the will for probate, citing *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952). Just as the doctrine of estoppel cannot be used to nullify a mandatory statutory restriction, *Missouri Pacific Railroad Company v. American Statesman,* 552 S.W.2d 99, 105–06 (Tex.1977), we do not think it is available to circumvent the statutorily prescribed method of revoking a will, and thus deny probate to a duly executed and unrevoked will.

Appellees make the additional claim that because of the fraudulent conduct of appellant the estate of the deceased should be properly impressed with a constructive trust in favor of appellees. It is argued that the fraudulent conduct of appellant in causing the testator to believe his will had been destroyed was the sole reason the will physically survives, and that the law imposes a constructive trust upon the estate in favor of the victims of the fraud to the extent that each would have otherwise received one third of the estate by statutory descent. *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559 (1948) is cited as authority for this contention.

◼ In *Pope v. Garrett, supra,* the party desiring to make a will, leaving all of her property to one not related to her, was forceably prevented by relatives, using physical restraint, from executing the will. The court there held that a trust should be impressed upon the entire estate in favor of the intended beneficiary—not just upon the interest of those who prevented the execu-

tion of the will. That case did not involve the probate of a will; instead, it was a suit to impose a constructive trust upon property of the deceased in favor of a non-relative because the deceased was forceably prevented from signing a will, already prepared, which devised her property to the non-relative. The court said at page 562, 211 S.W.2d 559:

> We realize that a constructive trust does not arise on every moral wrong and that it cannot correct every injustice. 54 Am.Jur., p. 169, Sec. 218. It must be used with caution, especially where as here proof of the wrongful act rests in parol, in order that it may not defeat the purposes of the statute of wills, the statute of descent and distribution, or the statute of frauds.

In our view the fact situation in this case does not warrant a constructive trust. A constructive trust arises when one in a fiduciary capacity, or in some other relationship, commits a fraud by which he obtains or holds a legal right to property to which he is not entitled in equity and good conscience. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951); 57 Tex.Jur.2d *Trusts* § 54 (1964); 16 Am.Jur.2d *Trusts* § 221 (1975); *see Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974). Any misconduct or fraud committed here against the testator, which was detrimental to appellees, was done by appellant Sue Morris, who was not a beneficiary under the will, but was a trustee for Floyd Lee Morris, Jr., the will's devisee. The imposition of a constructive trust against the beneficial owner of the property under the will would be improper since he has not obtained a legal right to property by any fraudulent or wrongful act on his part. *See Bounds v. Caudle*, 560 S.W.2d 925, 928 (Tex.1977).

Judgment of the trial court is reversed and judgment is rendered that the will be admitted to probate.