75 Cal.App.2d 386 (1946)
Estate of ODETTE GRAY, Deceased. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Petitioner,
v.
CARROLL F. GROW, Appellant; CLYDE W. GRAY et al., Respondents.
Civ. No. 15115. 
California Court of Appeals. Second Dist., Div. Three. 
July 17, 1946.
 Haas & Home Irwin T. Quinn and John D. Home for Appellant.
 Louis Naiditch and Roy A. Linn for Respondents.
 DESMOND, P. J.
 This is an appeal from an order denying probate of the last will and testament of Odette Gray, also known as Odette Durand, deceased, who died on or about July 17, 1944, at approximately the age of 60 years. Her will was offered for probate by the Security First National Bank of Los Angeles, named as executor and trustee therein. The petition alleged that the estate was "valued at less than $10,000." The appeal is prosecuted by Carroll F. Grow, the surviving brother of deceased, named in the will, and father and guardian ad litem of Evelyn E. Grow, a minor, principal beneficiary thereunder. The proponent bank does not appeal. Although the hearing in the probate court was not upon a contest, David Parker Gray, son of testatrix, and Cylde W. Gray, her estranged husband, have filed briefs as respondents.
 After testatrix' death her will, consisting of eight typewritten pages, was found in her safety deposit box. It had been prepared by her attorney and was dated August 14, 1943. By its terms she bequeathed to her son the sum of $500 and various personal effects of small intrinsic value "but of high sentimental value to me, as well as to my son." Other small legacies were left to her brother Carroll, to various friends and to the Braille Institute for the Blind. To her husband, Clyde W. Gray, from whom she had never been divorced, she left the sum of $1.00, the will stating that they had separated approximately 22 years ago "at which time my said husband disappeared and deserted me and my son, who was then eight months of age, and I have never since heard from him in any way, shape or form." The will provided that after payment of the various legacies the remainder of the estate was to be conveyed to the Security First National Bank of Los Angeles, as trustee, the net income from the corpus of the estate to be paid to Evelyn E. Grow, the niece of testatrix, in monthly installments of not less than $25 until she became 21 years of age, at which time the balance of the corpus was to be delivered to her and the trust terminated. The will further provided that in the event the niece predeceased the testatrix or died before she became 21 years of age, *388 the net income and corpus of the estate was to be paid to Mrs. Gray's brother, Carroll F. Grow, and in the event of his death under certain stated conditions, to the Braille Institute for the Blind. The will specifically disinherited the wife of testatrix' son, and provided that if anyone mentioned in the will contested it his share of the estate as designated in the will would pass into the residue. The will nominated and appointed testatrix' attorney, E. Llewellyn Overholt, "who wrote this will, and who understands my wishes and desires," as attorney for the administration of the estate and the trust. The signed name of the testatrix appeared at the end of the will at the foot of the seventh page thereof and, immediately following but on the eighth page, appeared an attestation clause, reading as follows: "The foregoing instrument, consisting of seven pages including the page signed by the Testatrix, was on the date thereof, by the said Odette Durand, also known as Odette Gray, subscribed, published and declared to be her last Will and Testament, in the presence of us, who at her request and in her presence, and in the presence of each other, have signed the same as witnesses thereto; and we further declare that at the time of signing this Will, the said Odette Durand appeared to be of sound and disposing mind and memory and not acting under duress, menace, fraud, or the undue influence of any person whomsoever."
 [Signed] Florence Feld
 Residing at 6735 Sunset Blvd.
 Hollywood, California
 [Signed] Mary L. Krigbaum
 Residing at 6722 Sunset Blvd.
 Hollywood, California.""
 When the matter came on for hearing, Mrs. Krigbaum testified that she saw Mrs. Feld sign the will. When asked, "Was the will actually signed by Mrs. Gray in your presence?" this witness answered, "I think it was signed when we got there. As I recall it, she had signed it and passed the pen to Mrs. Feld. She called me on the telephone and asked me if I would witness her will." Mrs. Feld testified that she signed the will at the testatrix' request; that she saw Mrs. Krigbaum sign the will. Upon being asked whether Mrs. Gray signed it in her presence, she stated, "She didn't sign it in my presence. She asked me to sign it and handed the pen over to me." This witness stated that she "couldn't *389 swear" to the fact that she saw Mrs. Gray's signature on the instrument at the time she signed it; that she did not recognize her signature; that she never knew her previously.
 The hearing was continued for one week and on September 14, 1944, Mr. Overholt took the stand and related the details relative to the preparation of the will. He testified that testratrix had been an acquaintance and client of his for a number of years; that he went to her home after she had called him and obtained the necessary information from her and on August 4th mailed her an original and copy of a will, together with a letter of transmittal which suggested that she go over it carefully and make any changes on the copy. The letter advised her that "If everything is in order I will be glad to drop by either Monday or Tuesday and have the will executed in the presence of two witnesses, or you can have it signed in my absence by merely having both the witnesses present at the same time you sign the will and have it signed and witnessed at your request and in the presence of one another." Mr. Overholt further testified that a few days later he received a copy of the will bearing certain changes; that he corrected the document in accordance with the wishes of Mrs. Gray; that a night or two later he took it back to her, discussed it with her quite at length; that at that time there were no witnesses there and so he instructed her to follow the directions given in his letter of transmittal; that on August 29, 1943, she telephoned him and gave him the names and addresses of the two witnesses, stating that "she had executed the will, and followed my instructions, and that the two witnesses had signed in her presence, and so forth. I cannot say she told me definitely she signed in their presence, but she said she followed my instructions and that she was going to put the will in her safety box." Mrs. Krigbaum was then recalled and testified that she went to the testatrix' home with "Mrs. Feld, the lady that signed it first"; that when they arrived they found the testatrix "sitting at the coffee table, and I thought she signed it, but evidently she had signed it already, because she just handed the pen to Mrs. Feld and she signed it, and then I sat down and signed it. Q. Was anything said at that time as to whether the document was her will? A. No, she didn't say. Q. What did you understand it was? A. I understood it was her will, because she told us to come up to witness her will, and naturally we took it for her will, because she asked us to come up and sign it." *390
 At the conclusion of this testimony, the court denied the petition for probate.
 Appellant states in his brief that he is "concerned in the manner of the execution only with subdivisions (2) and (3)" of section 50, Probate Code. That section, in part, provides as follows: "Every will ... must be executed and attested as follows: ... (2) Presence of witnesses. The subscription must be made, or the testator must acknowledge it to have been made by him or by his authority, in the presence of both of the attesting witnesses, present at the same time. (3) Testator's declaration. The testator, at the time of subscribing or acknowledging the instrument, must declare to the attesting witnesses that it is his will. ..." [1] That there was a declaration sufficient to meet the requirements of subdivision 3, above, appears from the testimony of the two witnesses already quoted, considered in the light of the court's statement in Estate of Silva (1915), 169 Cal. 116, 120 [145 P. 1015]: "It is not necessary that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such. It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions, although there is no declaration in words to that effect. The testimony leaves no doubt that the testator signed the document as his will, that he gave all persons present to understand that it was his will and that he desired the subscribing witnesses to attest the same for the purpose of constituting it a will." In the discussion of a similar question in Estate of Cullberg (1915), 169 Cal. 365, the following appears (p. 369): "The courts have, of course, no right to dispense with proof of any of the statutory requirements for the making of wills (In re Walker, 110 Cal. 387, 390, [52 Am.St.Rep. 104, 30 L.R.A. 460, 42 P. 815]), but, in determining what is required, regard should be had to the essential purpose of the various provisions, rather than to a strict and rigid reading of the words used by the legislature. And so it has generally been held that, under statutes like ours, the declaration by the testator that the document is his will, and his request for its attestation, need not be stated in exact terms, but may be implied from his conduct and the attendant circumstances. [Citing cases.]" [2] Since it is clear, under the authorities, that the requirement of section 50, Probate Code, as to declaration or "publication" *391 was met, we feel that, by a parity of reasoning, a similar finding on the question of acknowledgment of the signature should have been made. This principle received recognition in Estate of Abbey (1920), 183 Cal. 524 [191 P. 893], where, as briefly stated in the syllabus, "A will not signed by the testatrix in the presence of either of the subscribing witnesses is sufficiently executed where she declared to them that the instrument was her will and requested that they sign as subscribing witnesses, since such request was in effect an acknowledgment of her signature to them, for only by signing the will in their presence, or by acknowledging the same in their presence, could they become subscribing witnesses." In the text appears the following (p. 526): "The request that these persons sign the will as 'subscribing witnesses' was in effect an acknowledgment of her signature to them, for only by signing the will in their presence, or by acknowledging the same in their presence, could they become subscribing witnesses. The word 'subscribing' in the request is, therefore, very significant, for the word assumes that the signature appended to the will is her signature, and hence amounts to an acknowledgment of such signature as her own." It will be noted in the instant case that the signatures of the subscribing witnesses were attached upon the request of Mrs. Gray. Mrs. Krigbaum testified that Mrs. Gray called her on the telephone and asked her if she would witness her will, and Mrs. Feld testified that she signed it at the request of Mrs. Gray. We do not overlook the circumstance that in the Abbey case the court noted that the signature of the testatrix was on the same page as those of the witnesses "and no doubt the signature was visible to the subscribing witnesses at the time each signed the will." We do not think this comment was necessary to sustain the opinion, but note that in the present case the attestation clause was signed by the witnesses on page 8 of the instrument and there was visible in that clause a statement that "The foregoing instrument, consisting of seven pages including the page signed by the Testatrix, was on the date thereof, by the said Odette Durand, also known as Odette Gray, subscribed, published, and declared to be her last Will and Testament," etc. (Italics added.) [3] No one testified at the hearing that the signature which appeared at the end of the will was that of Mrs. Gray, but no question was raised as to its genuineness. Her signature and those of the subscribing witnesses gave rise to *392 the presumption of due execution (Estate of Pitcairn (1936), 6 Cal.2d 730, 732 [59 P.2d 90]; Estate of Braue (1941), 45 Cal.App.2d 502, 505 [114 P.2d 386]), and there was nothing in the evidence to overcome that presumption. If neither of the subscribing witnesses had been living, the will would have been entitled to probate upon proof of the genuineness of their signatures and the signature of the testatrix. This presumption of due execution is one of the most beneficent and useful known to the law, and since the testamentary dispostion of property is favored and protected (In re McDevitt (1892), 95 Cal. 17, 33 [30 P. 101]; Estate of Morey (1905), 147 Cal. 495, 505 [82 P. 57]), it should be applied wherever it is reasonable to do so, in order that technical rules of law may not be allowed to defeat the expressed wishes of those who make wills. The actions of Mrs. Gray constituted an unequivocal acknowledgment and declaration that she was executing the document as her will. The law does not require useless formalities, and any oral declaration by her could not have expressed her intentions more unmistakably than they were expressed by her actions. The purpose of the law in requiring the maker of a will to declare it to be his will is to avoid the possibility of fraud or mistake. Considering the facts established by undisputed evidence, there was not even a remote possibility that Mrs. Gray was doing or thought she was doing anything other than to execute her will. What else could she have intended when she handed the witnesses the pen after calling them in to sign her will as witnesses? The natural inference arising from the manner in which wills are usually signed, and the presumption also, established the fact that Mrs. Gray had signed the will before it was presented to the witnesses for their signatures. The presumption, as well as the direct evidence, leaves no doubt that all her actions were motivated by the sole purpose to carry out the instructions of her attorney in the execution of the will. There is nothing in Estate of Krause (1941), 18 Cal.2d 623 [117 P.2d 1], relied upon by the respondents, to controvert the reasoning under which the presumption of due execution is to be given effect. In that case the trial judge had found that the testatrix "'... did not sign said will in the presence of said witnesses, nor declare or acknowledge to them, or either of them, that it was her will or that she had subscribed said will.'" Nevertheless, the trial court concluded that the will "'was executed in accordance *393 with the requirements of law (Estate of Pitcairn, 6 Cal.2d 730 [59 P.2d 90] ...), and it should be admitted to probate,'" thus giving effect to the presumption of due execution, after finding all the facts contrary to the presumption. It was held on appeal (p. 626): "... the court was not justified under such circumstances in forming its conclusions in accordance with the presumption [of due execution] but should have based them upon the facts found," and the judgment was reversed. Naturally it could not have been affirmed upon the finding of nonexecution. The Supreme Court in the Krause case was not called upon to determine whether the actions of the testatrix did or did not constitute a declaration or an acknowledgment to the witnesses that the document which she presented to them was her will and that it had been subscribed by her. The trial court made an adverse finding upon that subject and then, as the Supreme Court pointed out, made an order admitting the will to probate in direct contradiction to the findings. Under those circumstances no course was open to the Supreme Court other than to reverse the order.
 In the present case, the facts call the presumption of due execution into operation and it is evidence as to each and all of the essentials thereof. All the direct evidence tended to support it. There was no single circumstance to raise a doubt that Mrs. Gray had signed the will before presenting it to the subscribing witnesses. In such a situation the presumption should prevail. It serves to furnish the proof of execution where something is lacking in the direct evidence. It can be overcome, of course, by other evidence, but not by a mere absence of evidence. Failure of execution may not be considered established in contravention of the presumption for the single reason that there is missing some element of direct proof which, if present, would have rendered it unnecessary to rely upon the presumption. In other words, in the absence of direct evidence as to whether Mrs. Gray's signature was or was not affixed before those of the subscribing witnesses, it must be assumed to have been there when she asked the witnesses to sign. Our opinion assumes that the subscription at the end of the will is the signature of Mrs. Gray and that the failure to prove that fact was a mere oversight, but upon further consideration we believe that our judgment of reversal should not foreclose the court from taking evidence as to the genuineness of what purports to be her signature. The judgment *394 is reversed and the court is directed to receive evidence as to whether the name of Mrs. Gray at the end of the will is in her handwriting and to admit the will to probate unless it be found not to be in her handwriting.
 Shinn, J., and Wood, J., concurred.