[Civ. No. 16277. Second Dist., Div. Two. Aug. 4, 1948.]

Estate of VICTOR C. EMDEN, Deceased. SALLY EMDEN BAECKER, Appellant, v. COURTLAND V. EMDEN et al., Respondents.

Aaron Levinson and Albert E. Marks for Appellant.

Jones & Hoyt and George A. Elstein for Respondents.

WILSON, J.—Victor C. Emden died on August 31, 1945. Shortly before his death he executed two wills, both of which were offered for probate. The first of these was dated June 30, 1945, and by its provisions the bulk of his estate was left to his

only son, Courtland, the issue of his first marriage, with certain bequests to his nurse, Nita Dubail, and a small bequest to his second wife, Sally Baecker, from whom he was divorced. A codicil to this instrument, dated August 7, 1945, eliminated the nurse as a beneficiary. The second will was executed August 11, 1945, and by its terms the entire estate was left to Sally Emden Baecker with the exception of $1.00 each to testator's son and daughter-in-law.

The probate of both wills was contested and the petitions for probate and contests were tried together. Contestant Sally Baecker alleged undue influence on the part of the nurse, Nita Dubail, in connection with the execution of the will of June 30th, and contestant Courtland Emden alleged undue influence upon the part of Sally Baecker, her sister, Edith Verdi, and her mother, Ray Lapidus, in connection with the execution of the will of August 11th. Each contestant alleged unsoundness of mind on the part of the testator and that the will presented by the other party was not executed in the manner and form required by law.

This appeal is from the entire judgment, including the admission to probate of the will of June 30, 1945, and the codicil dated August 7, 1945. However, the issues raised by appellant as grounds for reversal relate solely to that part of the judgment denying the admission to probate of the will of August 11, 1945. The order denying the motion for a new trial is nonappealable and the purported appeal therefrom will be dismissed.

Victor C. Emden's first wife died in 1933, and in the following year he married Sally Emden. About 1934 or 1935, he became estranged from his only son, Courtland. He executed a will on September 15, 1939, in which he bequeathed to his son and daughter-in-law $1.00 each and stated he intentionally made no other provision for his son and that he had advanced various sums of money to him from time to time. The balance of the estate was left to Sally Emden. In January, 1941, Emden obtained a default decree of divorce from Sally in Las Vegas and she subsequently married Mr. Baecker and resided in Honolulu from the time of her marriage until June, 1945. Emden remained on friendly terms with her and they corresponded. In April, 1944, he wrote Sally and enclosed a codicil to his 1939 will, the codicil being dated April 7, 1941, the sole purpose of which was to change the name of Sally Emden as shown in the 1939 will to Sally Baecker.

In May, 1945, Emden suffered a heart attack while dining at the home of Sally's mother, Ray Lapidus. He was taken to a hospital in Santa Monica and when he left there he returned to the home of Sally's mother where he stayed for two or three weeks and then went to the Hermoyne Apartments. Nita Dubail was his nurse in the hospital and she continued to be his nurse until about August 1st, when he moved to the Glendale Sanitarium. On June 22, 1945, Emden executed a holographic will in which he gave $5,000 to Nita Dubail and the residue of his estate to his son.

L. J. Jones, who had been Emden's attorney for about 15 years, testified that on June 25, 1945, Emden gave him the holographic will and asked him to make a new will cutting, down the bequest to Nita Dubail to $2,000, adding one or two other bequests and giving the balance of his estate to his son. In accordance with these instructions Jones prepared the will which was executed by the testator on June 30, 1945, and which is the will admitted to probate together with the holographic codicil of August 7th, which eliminated the bequest to nurse Nita Dubail. Jones further testified that pursuant to Emden's instructions about August 7th, he prepared a new will which he sent to Emden and which was the same as the will of June 30th, with the change effected by the codicil. That will was never executed. Jones testified also that during this period Emden informed him that Sally Baecker's sister, Edith Verdi, had $50,000 in cashier's checks, possession of which he desired to recover; that following Emden's instructions he and Edith Verdi opened a joint account with Emden by depositing the cashier's checks and then obtained a cashier's check for the entire amount payable to Victor C. Emden, which Emden turned over to him for safe keeping. The witness also related that Emden told him that when he, Emden, should have regained his health, he wished to see his son; that he didn't want Mrs. Verdi or any of the family including his ex-wife to have any part of his property; that he had provided for his former wife very handsomely and had taken care of her family over a period of years and he did not feel they were entitled to any more of his estate; that he had done enough for them; that he was afraid of them; that blood was thicker than water. Jones further testified that Mr. Emden wanted to execute the will of June 30, 1945, at a time when Mrs. Verdi would not be present and therefore arranged for its execution on the day her son was being operated upon; that commencing in June, 1945, Mr. Emden never expressed

the desire to disinherit his son but on the contrary stated he wanted to leave his estate to his son.

Nita Dubail testified that Mr. Emden told her he had a son with whom he had a disagreement when he married Sally Baecker and that they had not been on friendly terms since; that his son was successful and had a fine wife and at some future date he wanted her to meet them and take a message to them; that Emden instructed her to telephone Courtland and make an appointment to see him on the fourth of July; that Emden told her he wanted her to meet his son and tell him about his condition and who his doctor was; that they were going to be father and son when he was well but he did not wish to see him until he was well; that after she saw Courtland on July 4th Emden was interested in knowing how his son looked and what he was doing and wanted her to see him again and go to their home and meet his son's wife; that she reported to Mr. Emden that his son and the latter's wife wanted him to come and live with them and be taken care of but that he said he would never go home like a prodigal son, that he desired to be well on his feet before he would go into their home. She further testified that after the will of June 30th was signed Emden said: "We will conceal it so Edith won't be suspicious and won't ask what it is and when Mr. Jones comes out to visit me again, I will let him take it."

On July 25, 1945, Emden wrote a letter to Jones in which he stated: "Should you receive an emergency call, please notify Courtland as soon as same reaches you."

About August 8, 1945, Emden requested Sally Baecker to bring him the will she had which was dated September 15, 1939. He went over this will and made minor changes in his own handwriting and asked Mrs. Verdi to have a copy made with the changes. Both Sally Baecker and Edith Verdi were standing beside Emden as he made these changes. Mrs. Verdi had the will copied by a notary and this was the instrument which was executed on August 11, 1945, and which appellant offered for probate.

Also on August 8th, Emden wrote Jones as follows: "Just a line to remind you not to forget to telephone C and tell him I received his letter and that I have an apartment. Will see how my condition progresses—the idea being, Jones that I do not want him to call on me until such time as thru you I'll notify him to do so . . ."

On August 10th, Emden wrote Jones: "Letter with will received. I found out my nurse is 64 (don't look it) so won't

use her to sign so the return of the will may be delayed a few days.''

The trial court found that the will of August 11, 1945, was not executed in the manner prescribed by law in that it was not subscribed by the testator in the presence of two witnesses, that the testator did not declare the instrument to be his will in the presence of two witnesses, and both witnesses did not sign the instrument as witnesses at the request of the testator; that Sally Baecker and Edith Verdi did exert undue influence over the testator and but for their influence the will of August 11, 1945, would not be in existence.

Appellant asserts as grounds for reversal (1) that the trial court erred in rejecting offers of proof made in connection with the testimony of the witnesses to the will; (2) that there was error in permitting respondent to use and have received in evidence written statements obtained by him from those witnesses without laying the proper foundation; (3) that there was no evidence to support the trial court's finding that the will of August 11th was not duly executed and (4) that there was no evidence upon which the court could base a finding of undue influence.

■ Whether or not a will has been executed in accordance with the statutory requirements is a question of fact and the trial court's determination on that issue cannot be overturned unless it is without support in the evidence. (*Estate of Cullberg*, 169 Cal. 365, 370 [146 P. 888]; *Estate of Goldsworthy*, 54 Cal.App.2d 666, 670 [129 P.2d 949].)

The formalities required in the execution of a will are found in section 50 of the Probate Code, subdivision 3 of which provides: ''The testator, at the time of subscribing or acknowledging the instrument, must declare to the attesting witnesses that it is his will.''

■ It is not necessary for the testator to state orally that the document is his will or to expressly request the witnesses to sign it as such. The requirements of the statute are met if by the testator's conduct and actions the declaration and request are unmistakably indicated to the persons signing as witnesses. (*Estate of Cullberg, supra; Estate of Silva*, 169 Cal. 116, 120 [145 P. 1015]; *Estate of Gray*, 75 Cal.App.2d 386, 390 [171 P.2d 113].)

In the instant case both witnesses testified that Emden did not in so many words ask them to act as witnesses to his will, nor did he at any time during the execution of the document state that it was his will. If there were any such request

and declaration it will, therefore, have to be implied from the testator's conduct and actions.

Witness Foster testified that Mrs. MacLeod called her into the testator's room and said that Mr. Emden wanted her to sign a document; that when she entered the room Mr. Emden was sitting on the edge of the bed and he handed her the pen and indicated the place where she was to sign; that she saw him use a pen; that he signed something but she did not see his signature; that she did not recall whether this was before or after she signed; that the document was partly folded, she did not remember how much; that she did not see Mr. Emden's signature on the document; that in her own mind she knew it was a will. Witness MacLeod testified that on the preceding day Mr. Emden stated he had a paper he would like to have someone sign, and on the day the document was executed he asked her whether she would sign a paper and have someone with her sign; that she went out and met Mrs. Foster and told her Mr. Emden wanted her to sign a paper; that she did not see Mr. Emden using a pen; that she did not know the document was a will and nothing was said to indicate it was a will; that she did not see Emden's signature on the document and that she signed where he indicated and walked away; that the document was "folded, just folded where I would just see the line I was to sign on."

The witnesses to the will executed on June 30, 1945, testified that Mr. Emden requested them to witness his signature to his will; that he signed the document and gave the pen to the first witness; that after she signed he handed the pen to the other witness, who signed; that the document was laid out and the whole lower page was exposed.

From the foregoing it is apparent that there is substantial evidence to support the finding of the trial court. There was nothing said or done by Emden at the time of the execution of the document of August 11, 1945, from which it could be implied that Emden signed the document as his will or that he gave the witnesses to understand it was his will or that he desired them to attest it for the purpose of constituting it a will. Indeed, a consideration of the background and all the surrounding circumstances and a comparison of the manner in which the document of August 11th was executed with the manner in which the will of June 30th was executed justifies the conclusion reached by the trial court that the testator deliberately concealed from the witnesses the fact that he had not signed the alleged will but folded the document so

they could not see the line where he should have signed; that his acting as though he was in fact signing his name when he was not, was deliberately done to conceal from the witnesses the fact that the document was incomplete, with the intent on his part to give it the appearance of a complete will at the time it was delivered to Sally Emden Baecker and her sister, Edith, and that he well knew himself the effect such concealment and the failure to declare the document to be his last will would have as a matter of law.

The evidence shows and the court found that the will of June 30th was executed in all respects as required by the provisions of section 50 of the Probate Code and this fact, coupled with the care exercised by Emden in not executing the will of August 11th as required by the statute, indicates a knowledge on his part of the manner in which a will must be executed to be valid and a fixed intent and purpose that the will of June 30th should be his last will and testament and that the document of August 11th should be ineffective for any purpose.

There is a presumption that a will has been duly executed upon proof of the signatures of the testator and the witnesses. (*Estate of Morey*, 75 Cal.App.2d 628, 634 [171 P.2d 131]; *Estate of Pitcairn*, 6 Cal.2d 730, 732 [59 P.2d 90]; *Estate of Braue*, 45 Cal.App.2d 502, 505 [114 P.2d 386]; *Estate of Silva*, 169 Cal. 116, 120 [145 P. 1015].) As stated in *Estate of Flentjen*, 80 Cal.App.2d 731, 733 [182 P.2d 579], ''If the evidence shows that an instrument purporting to be a will bears the signature of the testator and *was declared by him to be his will* to two persons who signed at the end of the will as witnesses, in his presence and at his request, the instrument is duly proved as a will. A presumption of due execution arises under these circumstances and it supplies evidence that the signature of the testator had been affixed to the will before he made his declaration and before the signatures of the subscribing witnesses were affixed.'' (Emphasis added.) As hereinabove stated, there was no evidence that Emden either by words or actions *declared* the document of August 11th *to be his will.*

The cases cited by appellant in support of her contention that the will was duly executed may be distinguished on their facts. In *Estate of Pitcairn, supra,* one of the witnesses testified that she was asked to sign a paper without being told it was a will. The court, after stating the general rule that a presumption is independent evidence which may be weighed

against positve testimony, found that under the facts of that case the presumption, together with other circumstances such as the exposed mistaken testimony of the witness justified a finding that the will was properly executed. In *Estate of Abbey*, 183 Cal. 524 [191 P. 893], testatrix signed with only her attorney present and when the witnesses came into the room acknowledged it was her will and that she wanted them to sign as subscribing witnesses. In *Estate of Cullberg*, 169 Cal. 365 [146 P. 888], the will, including the attestation clause, was read in the presence of the witnesses and the testatrix, who remained silent. Under such circumstances her silence was found to be a sufficient indication that the request was by her authority. In *Estate of Gray*, 75 Cal.App.2d 386 [171 P.2d 113], one witness testified the testatrix called her on the telephone and asked her if she would witness her will and the other witness testified she signed the will at the testatrix' request. The court held that this was a sufficient declaration and acknowledgment to meet the requirements of the statute.

There is a similarity between the facts in the instant case and those in *Estate of Krause*, 18 Cal.2d 623 [117 P.2d 1]. In that case the testatrix telephoned next door to Mrs. Cullinan and asked her to come over with Mrs. Frizelle to witness a will. Mrs. Frizelle at the request of Mrs. Cullinan went over to the testatrix' home. The testatrix did not say anything about her will but said "there is a pen and ink, sign it." The paper was folded so the signature, if any, could not be seen. Testatrix neither signed nor declared nor acknowledged to the witnesses that it was her will. The court held that the presumption of due execution did not apply where testimony of witnesses showed positively that the will was not executed in accordance with the requirements of the law.

Appellant maintains that the rule as stated in *Estate of Fuselier*, Myricks Prob. Rep. 40, that "in some way and at the time the witnesses must be informed from the testator that he wishes them to understand that the paper is executed as his will" is not the law today and cites *Estate of Abbey, supra,* and *Estate of Cullberg, supra*. Neither of these cases supports appellant's contention, since in each case the court held that there was a declaration and acknowledgment at the time of the execution of the will.

Appellant contends that contestant was required to offer proof which standing alone would have warranted a finding that the will had not been duly executed and cites *Estate of*

*Stone*, 59 Cal.App.2d 263 [138 P.2d 710]. In that case there was no evidence adduced which would affirmatively support contestants' claim that the will had not been duly executed, and the presumption of due execution therefore applied. In the instant case the testimony of both witnesses gives affirmative support to respondent's allegation that the will was not duly executed.

Appellant asserts that the trial court erred in rejecting the testimony included in the two offers of proof and that by this testimony she could have impeached respondent's witness MacLeod, who had previously testified she did not know the document she signed was a will, and could have established that both witnesses knew it was a will and that they were acting as witnesses to a will and that such knowledge would constitute part of the declaration of the testator. The first offer of proof was that the witness Foster would testify that before she affixed her signature to the will she was approached by Mrs. MacLeod who said to her that Mr. Emden wanted her to be one of two witnesses; that she stated she did not want to be a witness to a will and that Mrs. MacLeod said in effect: "Don't be an old fussbody, Mr. Emden wants to execute his will, just come in and be one of the two attesting witnesses with me." The second offer of proof was that witness Foster would testify that after they left the room Mrs. MacLeod said that they had just witnessed Mr. Emden's will. ■ The proffered testimony related to conversations which took place outside the hearing of the testator and any statements made by witness MacLeod as to what the testator had said would be hearsay and therefore inadmissible. ■ The testimony as to what was said by witness MacLeod to Mrs. Foster in those conversations could not be used for the purpose of impeachment without laying the foundation therefor. (Code Civ. Proc., § 2052.) ■ Furthermore, to establish that both witnesses knew it was a will would be immaterial if there was no declaration on the part of the testator either by words or conduct at the time of the execution. The testimony was properly excluded. It is also noted that witness Foster had already testified to the fact that Mrs. MacLeod asked her to sign a "document" and that "in her own mind she knew it was a will." The fact that a person knows in his own mind that a document is a will does not constitute a declaration on the part of the testator that it is his will.

■ Appellant's contention that the use and admission of the written statements of the witnesses Foster and MacLeod constitute reversible error is without merit. Comparing the testimony of witness MacLeod with the statement admitted in evidence, there is little if any contradiction. In the statement signed by Mrs. MacLeod she declared: "Mr. Emden did not sign this document in our presence." She testified that she did not see the testator sign and did not see him use his pen and that she never saw his signature before it was shown to her in court. There is no conflict in these statements. To her knowledge the testator did not sign the document in her presence. Similarly, the statement signed by Mrs. Foster that "I did not see Mr. Emden's signature on the document as he took the pen & document after I signed, he wrote something but I didn't see what" is virtually the same as her testimony. Therefore conceding, without deciding, that the statements were not admissible the error was not prejudicial to appellant since there is no material variation between the statements and the testimony of the witnesses.

Having determined that the will of August 11, 1945, was not executed in the manner provided by law, it is not necessary to decide the question whether there was any substantial evidence to support the finding that Emden executed it by reason of the undue influence of Sally Emden Baecker and Edith Verdi.

Since appellant in her brief does not contend that the evidence does not support the findings relative to the execution of the will of June 30, 1945, and the codicil of August 7, 1945, or that portion of the judgment admitting the will and codicil to probate, there is no reason for a discussion of the evidence relative thereto.

The judgment is affirmed and the attempted appeal from the order denying the motion for a new trial is dismissed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied August 19, 1948, and appellant's petition for a hearing by the Supreme Court was denied September 30, 1948.