[Civ. No. 16560.   First Dist., Div. Two.   Oct. 17, 1955.]

Estate of WILLIAM H. N. LORENZ, Deceased.   ROY P. NEWELL, Appellant, v. FRANK D. LORENZ et al., Respondents.

George D. Collins, Jr., for Appellant.

Richard Coblentz for Respondents.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of San Mateo County denying the petition of appellant Roy P. Newell for the revocation after probate of the will of William H. N. Lorenz, deceased.

The testator, William H. N. Lorenz, was also known as William H. Newell, III. He was the son of appellant, and was killed in action in Korea on October 19, 1952, while serving as a lieutenant in the United States Air Force. Testator was born on February 2, 1925. When he was 3 years of age his mother obtained a final decree of divorce from appellant, by which custody and control of testator and three other minor children of the couple was given to the mother. There was testimony that after the divorce the couple still lived together until the wife's death. Testator's mother died on April 17, 1931, when he was 6. years of age, and from that time on testator lived in respondents' home.

Subsequent to the death of testator's mother, a Dr. Morrison was appointed guardian of testator. He later resigned, and on October 9, 1933, Dr. Frank D. Lorenz was appointed guardian by order of the Superior Court in and for the County of San Mateo, and said respondent continued as guardian until testator attained his majority.

While at Camp Stoneman, California, prior to going overseas testator executed the last will here in question. Neither of respondents was present at the time. Testator bequeathed all of his estate to his guardian, respondent Dr. Lorenz, and made no reference to, nor any provision for, appellant or any other relative.

Two of the three attesting witnesses, Sergeant Dyer and Sergeant Rucinski, testified at the hearing of July 17, 1954, after which the will was admitted to probate. They stated that they did not know where the third attesting witness, Corporal Schroeder, was at that time. Counsel for appellant appeared at that hearing, examined witnesses, and argued against the admission of the will to probate, but did not file a formal contest before probate. The will was admitted to

probate on August 7, 1953. No motion for a new trial was made nor was there any appeal taken from this order.

On January 21, 1954, appellant filed a petition for revocation of will on the grounds that the fraud of respondents vitiated the will, and that it was not executed as required by the Probate Code. Following a trial of the matter before the court, at which the testimony on the hearing prior to admission of the will to probate was admitted by stipulation, the court entered judgment denying the petition.

The fraud charged is that respondents led the testator to believe that appellant had abandoned him and prevented him from learning of his father's attitude toward him and interest in him. Appellant sets forth the evidence in the record that Dr. Lorenz in the petition for guardianship in 1933 set forth the claim that appellant had abandoned his son. He contends that he was not notified of the proceedings, but the order granting that petition recited that notice had been given to appellant. Appellant testified that his son developed a cold and distant attitude toward him. He attributed this to the fact that the respondents must have turned him against his father by false accusations that he had abandoned him. Appellant said that his son told him in 1946 that his foster parents did not want him to have anything to do with his family. The last contact with testator that either appellant or appellant's daughter testified to was in 1946, at the funeral of appellant's other son, who had been killed in action in Germany. The record showed payment of certain small sums toward testator's support that were paid from appellant's World War I veteran's disability pension, and from his salary while employed by the Civilian Conservation Corps. Appellant also testified that he made some cash payments starting when testator was 6 years old, but none after 1940.

In the instant case the will was executed some five years after appellant's contact with his son in 1946. The record is devoid of any later contact. Testator's sister testified to one incident when testator was 11 or 12 years of age. She went to visit him unexpectedly at the Lorenz home. Mrs. Lorenz was in bed, and said that she was sick, and that the witness was making her very upset having Bill go up there to visit his family. The sister testified that she saw her brother at the exposition on Treasure Island in 1939, and the next occasion was at their brother's funeral in 1946.

The trial judge may very well have accepted as true the

recitations in the order of guardianship that testator had abandoned his son.

The trial court in its findings of fact found all the allegations of appellant's petition false which charged respondents with conduct designed to turn testator against his father and sister.

Appellant cites cases to the effect that if prejudices are by falsehoods raised in the mind of a testator against the natural objects of his bounty, and he is kept from intercourse with them so that such false impressions may not be removed, it is such fraud as will nullify a will. (*Estate of Newhall,* 190 Cal. 709 [214 P. 231, 28 A.L.R. 778]; *Estate of Ricks,* 160 Cal. 467 [117 P. 539]; *Estate of Stoddart,* 174 Cal. 606 [163 P. 1010]; 26 Cal.Jur. 643, 770.) ██ It is settled, however, that whether fraudulent statements which might have induced the making of a will in a certain way, did actually induce it, is a question of fact. (*Estate of Carson,* 184 Cal. 437 [194 P. 5, 17 A.L.R. 239]; Page on Wills, vol. 1, § 181, p. 361.) ██ There is no direct proof that the testator ever was informed of the recitations in the petition for or order appointing guardian. It might, of course, be inferred that his coolness to his own blood relatives resulted from such knowledge. But since the evidence is conflicting, on the matter up to the year 1946, and since there is no evidence at all touching the period 1946-1951, the five years after testator attained his majority, it certainly cannot be said that fraud such as would vitiate the will is established as a matter of law. ██ Since testator had made his home with respondents from the age of 6 until he left for the service, it would seem that they would be the natural objects of his bounty. (See *Estate of Morcel,* 162 Cal. 188 [121 P. 733]; *Estate of Watkins,* 81 Cal.App.2d 465 [184 P.2d 192].)

Appellant contends that the will was not executed in conformity with the requirements of section 50 of the Probate Code. The uncontradicted testimony of two of the attesting witnesses is that testator signed the will which one of them prepared by filling in blanks in a mimeographed form will which was being used at that time at Camp Stoneman. It was signed by testator in an army office devoted at that time to the preparation of wills and powers-of-attorney for service men at that base. All three attesting witnesses were present when testator signed, and when each of them signed as witness.

■ Appellant criticizes the assembly line procedure used in making and executing the will. But if the procedure was valid, it is immaterial that it was rapid, and that thousands were done in exactly the same manner. The men at Camp Stoneman were briefed as to the service available at that post for the preparation of wills and powers-of-attorney. Lieutenant Lorenz went to the office designated for that purpose and stated to Sergeant Rucinski, one of the attesting witnesses, that he had come to make a will. A sign in that office read: "Wills and Powers-of-Attorney." The hours from 1 to 4 each afternoon were set aside by that office chiefly for the business of preparing those two types of instruments. Sergeant Dyer, one of the attesting witnesses whose desk was near that of Sergeant Rucinski, the witness who had typed the instrument for testator after securing from him the necessary information, stated that Rucinski asked him to witness the lieutenant's will, and he said that he would. He said that he would always witness a will if he observed that the man making it was not drunk and was in his right mind. Dyer signed Lieutenant Lorenz's will as an attesting witness and then passed it on to Corporal Schroeder, the third attesting witness, who was not available at the hearing.

■ It is well established in this state that the testator's declarations and requests to the subscribing witnesses as required by section 50 of the Probate Code may be by conduct instead of words. ■ In *Estate of Silva,* 169 Cal. 116, 120 [145 P. 1015], it was said: "It does not appear that the testator in words asked that these persons sign as witnesses or declared to them that the document was his will, but from the whole transaction as shown by the testimony it is very clear that all of them understood that he was promulgating the document as his will, that he desired these persons to sign the same as witnesses and that they were signing in compliance with his desire so manifested by his manner and actions." (And see *Estate of La Mont,* 39 Cal.2d 566 [248 P.2d 1]; *Estate of Cullberg,* 169 Cal. 365, 369 [146 P. 888]; *Estate of Gray,* 75 Cal.App.2d 386 [171 P.2d 113].)

■ There is no merit in the contention that the will was not properly executed because of the location of the signatures. The will is a single sheet of paper, and because the attestation clause comes between the signature of testator and that of the subscribing witnesses, appellant claims that the will is not witnessed at the end thereof, as required by section 50, sub-

division (4). Appellant has found no California case to support this contention.

In *Estate of Johnson*, 152 Cal. 778 [93 P. 1015], the Supreme Court of this state, in affirming an order admitting a will to probate, noted that after the testator's signature and above that of the subscribing witnesses was written "the usual attestation clause." (See also *Estate of Cullberg, supra*.) In *Estate of Gray*, page 388 (*supra*), the signature of testatrix was at the foot of page 7 of the will, the attestation clause and signatures of the subscribing witnesses were at the top of page 8. The order denying probate of this will was reversed in that case and an order admitting it to probate was affirmed in *Estate of Gray*, 89 Cal.App.2d 478 [201 P.2d 392]. The court there noted that the presence of the attestation clause and proof of the genuineness of the signature of the testatrix and the witnesses create a presumption of due execution, acknowledgment and declaration of the will, but observed that the formal attestation clause is not a necessity.

The judgment of the trial court finds full and ample support in the record before us.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.