[Civ. No. 22129. Second Dist., Div. One. Sept. 3, 1957.]

Estate of CONSTANCE R. GERST, Deceased. LOUIS GERST, Appellant, v. LUCIUS F. FOSTER et al., Respondents.

H. John Gluskin, Harry M. Fain, Joseph L. Lewinson and Henry W. Low for Appellant.

Kenny & Morris, Greenbaum, Baker & Ancel and Elsa Herbst Kernan for Respondents.

WHITE, P. J.—Louis Gerst, the contestant and claimed husband of decedent Constance R. Gerst, a.k.a. Constance Foster Gerst, a.k.a. Connie Foster Gerst, a.k.a. Constance Robertson Foster, a.k.a. Connie Foster, appeals from the judgment and order admitting the will to probate and directing the issuance of letters of administration with the will annexed to Lucius F. Foster, the son of said decedent.

The court found that:

I. Constance R. Gerst, also known as—Connie Foster, died on or about October 25, 1955 at Beverly Hills, California.

II. Said deceased at the time of her death was a resident of the County of Los Angeles, State of California, and left property in the County of Los Angeles, State of California.

III. That said deceased left a Will bearing no date but executed on or about February 5, 1950. Said Will reads as follows:

"Being of sound mind I wish my mother to write my last will and testament. Everything left to Michael and Ming Toy and other grandchildren I may have. Uncle Ben and my mother joint executors.

Connie Foster<br>Elizabeth Robertson

E. C. Rigby"

IV. Elizabeth Robertson was the mother of the decedent and predeceased her. Uncle Ben named in said will as executor thereof is Ben R. Meyer and said Ben R. Meyer has declined to act as such executor.

V. The will was executed on or about February 5, 1950. The testatrix was over the age of 18 years and was of sound,

disposing mind, and not acting under duress, menace, fraud or undue influence, and was in every respect competent by last will to dispose of all her estate.

VI. Said will was in writing signed by the said testatrix and attested by two subscribing witnesses. The said testatrix acknowledged the will in the presence of said witnesses, present at the same time, and said witnesses signed the said will at the request of said testatrix and in the presence of said testatrix and both of the witnesses, at the time of attesting the execution of said will, were competent.

VII. It is not true that the decedent at the time of the execution of said will was not of sound and disposing mind.

VIII. It is not true that said will was not executed by the decedent in the manner or form required by law for the execution of a will.

IX. It is not true that said document was signed by the decedent as the result of any fraud, duress and/or undue influence practiced upon the said decedent by any person at all or in particular by Elizabeth Robertson, the mother of the decedent.

X. It is not true that said Elizabeth Robertson, the mother of decedent, was ever in a position of trust and confidence with the decedent, or occupied a fiduciary relationship with the decedent.

XI. It is not true that the said Elizabeth Robertson at any time controlled and influenced the mind of the decedent with respect to the persons to whom the decedent should devise and bequeath her estate.

XII. It is not true that said Elizabeth Robertson ever urged, persuaded and/or coerced the decedent into leaving her estate to the decedent's grandchildren.

XIII. It is not true that Elizabeth Robertson continually and/or fraudulently or at all, ever attempted to poison the mind of the decedent against any person.

XIV. It is not true that Elizabeth Robertson ever supplanted her will for that of the decedent by any means or conduct at all.

XV. It is true that the said will was written by the hand of said Elizabeth Robertson but at the request of the decedent and the court finds that the will was signed by the decedent.

XVI. It is not true that at the time of signing said will that the decedent was in a state of extreme intoxication and was not following the dictates of her own will and it is not

true that the said will was not the free and/or voluntary act of the decedent.

XVII. It is not true that the said will was procured to be made by the fraud, undue influence and/or coercion of the said Elizabeth Robertson.

XVIII. Lucius F. Foster is the only surviving child of the decedent.''

■ Appellant contends that the evidence does not support Findings V and VI above quoted. He urges that if the document had been the will of decedent it would not have been found among the papers of her mother. The trial court was not convinced by that argument; and certainly an appellate court would not be justified in holding that, as a matter of law, a genuine will could not be found among the papers of testatrix' mother who witnessed it and is named therein as a coexecutrix.

Appellant urges that the will cannot be considered as such because of its failure to provide for decedent's only son and for the contestant, ''the man whom she held out as her husband for a period of sixteen years.'' This argument also was considered by the trial court. ■ One of the main reasons for the making of a will is to leave property to persons other than one's legal successors; and there is no presumption that a will which fails to provide for a putative husband is not a genuine will.

In appellant's opening brief, he states: ''The facts and logic which compel a contrary conclusion are as follows: . . . (d) Lucius F. Foster was not even positive that the decedent's signature, to wit: That of his mother, was on the document in question . . . This is the only testimony given in support of the genuineness of the mother's signature. (e) Louis Gerst testified that the signature appearing on the document did not look like that of his wife.''

Actually, Lucius Foster's testimony was that he ''believed'' the signature ''Connie Foster'' to be that of his mother. Louis Gerst testified positively that the signature on the will was not the signature of Connie Foster.

As to the genuineness of the testatrix' signature, there is also the testimony of Richard B. Courtright, a police officer of the city of Santa Monica assigned to the Division of Identification, called by appellant and qualified as an expert on handwriting. Mr. Courtright testified that he had, at appellant's request, examined the signatures of decedent already in evidence and had compared them with the signature

on the will, and, in his opinion, they were written by "one and the same person"; that "It is my opinion that the signature 'Connie Foster' on the document or the purported will was made by this person at a time when she was irrational or under duress of some kind"; that she was irrational or abnormal; intoxicated or under the influence of a drug or narcotic, ill, gravely ill; that we all differentiate some in signing our names; that he thought "the signature 'Connie Foster' on the purported will was made by a highly nervous hand, which could have been caused by intoxication, narcotics, drugs."

On recross examination, Mr. Courtright testified:

"Q. Mr. Courtright, you use the term 'abnormal.' That could be a person who might, say, have an upset stomach and severe headache, and perhaps even——

"THE COURT: Hangover.

"Q. (By Mr. Ancel) Hangover, is that correct? A. Pardon me. No, I wouldn't term upset stomach or headache.

"Q. Suppose their hands were shaking? A. An abnormal condition. With regard to the remark the Court made, the hangover would be abnormal, depending on what caused it, I suppose.

"THE COURT: That wasn't made facetiously, Mr. Witness. There is evidence here that she was intoxicated on one of two days.

"Q. (By Mr. Ancel) Suppose she had the shakes; she would be abnormal in your opinion, wouldn't she? A. Yes.

(And, on redirect examination)

"Q. (By Mr. Gluskin) In other words, would intoxication cause the name to appear in the manner in which it does on the purported will?

.   .   .   .   .   .   .   .   .   .   .   .   .

"A. In my opinion, that signature could very well be that of an intoxicated person.

"THE COURT: But you are not limiting abnormality to intoxication?

"THE WITNESS: I would limit that, if the Court please, to what the abnormality was."

█ The genuineness of decedent's signature is a question of fact already decided by the trial court upon conflicting evidence, and cannot be reviewed by an appellate tribunal.

█ The fact that the will is in the handwriting of Mrs. Robertson, decedent's mother and one of the witnesses, is

immaterial on the question of the genuineness of the will, and is entirely explained by the words of the document—"I wish my mother to write my last will and testament."

The signatures of both witnesses are genuine. One witness, Mrs. Robertson, predeceased testatrix; and the other, Dr. Rigby, had absolutely no recollection of the circumstances surrounding the execution of the will or the affixing of his own signature thereto. Such failure of memory of witnesses to wills, who are taking a minor part in an affair of little importance to themselves, is not unusual. That is the underlying reason for the customary attestation clause.

The will is undated. Dr. Rigby testified that he could have witnessed the decedent's signature only in February of 1950. He saw decedent on two consecutive days, which he believed to have been the 4th and 5th. On the first call made by him, decedent was intoxicated to such an extent that, in his opinion, she could not have written her name at all, but on the second day she had recovered and was completely sober. The second day was the only time he remembered being with both decedent and her mother. He could not remember that he or either of them had signed any paper, but he recognized the signature on the will as his own.

The genuine signatures of decedent, her mother and Dr. Rigby together with Dr. Rigby's testimony is sufficient to support the finding that the will was signed, declared and witnessed on February 5, 1950. Dr. Rigby's testimony that decedent had recovered and was completely sober on that day is sufficient to support the finding of capacity; and the testimony of Mr. Courtright that, in his opinion, decedent was in an abnormal condition at the time of signing said document, and that a hangover would be one such abnormal condition, is not necessarily in conflict with that finding.

Appellant urges that there is no support for the finding that testatrix acknowledged the will in the presence of said witnesses, present at the same time, and said witnesses signed the said will at the request and in the presence of said testatrix as required by Probate Code, section 50, subdivision (2).

One subscribing witness being dead and the other having no recollection of the incident, there is no testimony concerning the required acknowledgment of testatrix' signature or declaration by her that the paper was her will. There being no attestation clause appended to the will, there is no signed statement of the witnesses covering this question.

As stated by respondents in their reply brief, "Cali-

fornia follows the general rule that where a will bears the genuine signatures of the testator and attesting witnesses, the presumption exists on the death of the witnesses or failure of their memory that all of the requirements of Probate Code, Section 50, proof of which depends on the recollection of the witnesses, were duly observed." They cite and rely upon *Estate of Tyler,* 121 Cal. 405 [53 P. 928]; *Estate of Braue,* 45 Cal.App.2d 502 [114 P.2d 386]; *Estate of Gray,* 75 Cal. App.2d 386 [171 P.2d 113] and 89 Cal.App.2d 473 [201 P.2d 392]; *Estate of Flentjen,* 80 Cal.App.2d 731 [182 P.2d 579]; *Estate of Cecala,* 92 Cal.App.2d 834 [208 P.2d 436]; *Estate of LaMont,* 39 Cal.2d 566 [248 P.2d 1]; and *Estate of Pelton,* 140 Cal.App.2d 512 [295 P.2d 483].

The will in the Tyler case contained no attestation clause signed by the witnesses; and the living witness could not remember that the testatrix either signed in his presence or acknowledged her signature to him. At page 409 thereof the rule is stated as follows: "The fact that the instrument was signed by the testatrix and the attesting witnesses was proven. There was no evidence tending to disprove the proper execution of the will, or to impeach it in any way. These are the facts of the case; and it is not necessary for the purposes of this decision to go beyond them. We are satisfied that upon these facts the court was warranted in holding the will duly executed. Where an attesting witness has no recollection as to certain matters connected with the making of the will, the case is, upon principle, in the same condition as where he is dead, insane, or absent; and in such case 'proof of the handwriting of the testator and of the subscribing witnesses, or any of them, may be admitted as evidence of the execution' (Code Civ. Proc., § 1315); and such evidence is sufficient, in the absence of any counter-showing, to prove execution." (Probate Code, § 372.)

In *Estate of Kent,* 161 Cal. 142 [118 P. 523], only one witness was available; there was no attestation clause; and the witness could not recall that testatrix had declared the document to be her will or asked the witness to sign it. The trial court denied probate, and the Supreme Court, following *Estate of Tyler, supra,* reversed the judgment.

In *Estate of Pitcairn,* 6 Cal.2d 730 [59 P.2d 90], the court, after stating that the only evidence in support of the judgment was the presumption of due execution, said, at page 732: "We have, then, a case where the signatures of the testatrix and subscribing witnesses are genuine; the will is attested,

but lacks a formal attestation clause reciting the steps in execution; the attesting witnesses, seemingly adverse but uncontradicted on the essential issues, testify to a technical failure to comply with the formalities of execution. In such a case, may the trial court admit the will to probate? We think it may.

"The rule is well established that a regular and complete attestation clause makes out a *prima facie* case of due execution of the will. The authorities have clearly recognized that where witnesses are dead, unavailable or unable to testify or recollect, or are adverse or corrupt, it is necessary to rely upon other evidence of the sufficiency of the instrument, and accordingly have applied the above mentioned presumption. (Citing cases.) It is sometimes suggested that the recitals in the attestation clause furnish the basis for the presumption, so that the court in upholding the will against contradictory evidence is really making a finding from the declarations in the instrument. Following this theory contestants seek to limit the presumption to cases where a full attestation clause is contained in the will.

"In our view the distinction thus drawn is illogical and the rule is too narrow. There is no need of an 'attestation clause'; it is sufficient that a will be witnessed or attested, and the recital of the steps in execution is not required. (68 C.J. 711, § 392.) It does not seem reasonable, therefore, to have the important presumption of due execution turn upon the presence or absence of this unnecessary provision. The foundation of the presumption is the proof of genuineness of the signatures, for the instrument is then on its face a valid will. Doubtless recitals in an attestation clause are entitled to greater weight, but the logical basis for the presumption, as well as its practical necessity, is the same whether or not there is such a clause. This view has the support of a number of authorities. (Citing cases.)

. . . . . . . . . . . .

"The contestants herein seek to distinguish most of the cases applying the presumption in the absence of an attestation clause on the ground that the witnesses were either not present or unable to recall the facts. They contend that even if the presumption is applicable to those situations, the presence of subscribing witnesses who give adverse testimony destroys the presumption. But in our opinion, if the presumption be recognized, it is seldom material to an appellate court whether the subscribing witnesses were unavailable,

unable to remember, or gave affirmative testimony adverse to the will. A presumption is recognized in this state to be independent evidence which may be weighed against positive testimony, and in a proper case the lower court may follow the presumption of due execution from proof of genuineness of the signatures, though the witnesses attack the will. . . .''

The Braue, Gray, Flentjen, Cecala, Lamont and Pelton cases, *supra*, relied upon by respondent in this respect, and others not herein cited, follow the Tyler, Kent and Pitcairn cases hereinbefore discussed.

Appellant attempts to distinguish the facts of the instant action from those of the above cited cases, and, in his opening brief, cites *Estate of Emden*, 87 Cal.App.2d 115 [196 P.2d 627], as authority for the distinction, and for appellant's statement that ''if there is no evidence introduced that the testator, either by his words or actions, declares the document to be his Will, the presumption does not and should not arise.''

*Estate of Emden, supra,* was an appeal from an order admitting one will to probate and denying probate to another purported will. The reasons for reversal urged on the appeal relate solely to the denial of probate to the later will. In May testator suffered a heart attack. June 22 he executed a holographic will giving $5,000 to his nurse and the residue to his son. The will admitted to probate was prepared by his lawyer and executed June 30. It reduced to $2,000 the bequest to his nurse, added a few other bequests, and left the balance to his son. August 7, he executed a holographic codicil eliminating the bequest to his nurse. His attorney testified that, according to testator's instructions given him about August 7, he prepared a new will the same as the will of June 30, with the change effected by the codicil of August 7. The latter will prepared by his attorney was never executed. About August 8 testator, with his divorced wife and her sister standing beside him, revised an old will which had been in the possession of his ex-wife. It was copied by a notary and executed August 11. The will of August 11th is the one denied probate.

The trial court in the Emden case, *supra,* found that the will of August 11th was not executed in the manner prescribed by law. On appeal it was urged that there was no evidence to support that finding. At page 120 the court said: ''Whether or not a will has been executed in accordance with the statutory requirements is a question of fact and the

trial court's determination on that issue cannot be overturned unless it is without support in the evidence . . .

"In the instant case both witnesses testified that Emden did not in so many words ask them to act as witnesses to his will, nor did he at any time during the execution of the document state that it was his will. If there were any such request and declaration it will, therefore, have to be implied from the testator's conduct and actions."

In the Emden case, *supra,* both witnesses described the occurrence in detail. The court there was required to decide the issue by weighing the testimony of the witnesses against the presumption arising from the genuineness of the signatures. He believed the witnesses and made findings accordingly. The appellate court, at page 123, said:

"There is a similarity between the facts in the instant case and those in *Estate of Krause,* 18 Cal.2d 623 [117 P.2d 1]. In that case the testatrix telephoned next door to Mrs. Cullinan and asked her to come over with Mrs. Frizelle to witness a will. Mrs. Frizelle at the request of Mrs. Cullinan went over to the testatrix' home. The testatrix did not say anything about her will but said 'there is a pen and ink, sign it.' The paper was folded so the signature, if any, could not be seen. Testatrix neither signed nor declared nor acknowledged to the witnesses that it was her will. The court held that the presumption of due execution did not apply where testimony of witnesses showed positively that the will was not executed in accordance with the requirements of the law."

From the above quotations, it is apparent that the facts of the Emden case differ materially from the facts of the instant action. Here the only relevant testimony is that the signatures of the testatrix and two subscribing witnesses are genuine, that they were all together on February 5, 1950, and testatrix was then completely sober and able to make a will. The living witness has no recollection of the will or even the signing of his own name thereon, but is sure that was the only date upon which he could have signed it.

As we read the Krause case (18 Cal.2d 623), it was not there held that "the presumption of due execution did not apply where testimony of witnesses showed positively that the will was not executed in accordance with the requirements of the law." In the Krause case, the trial court found that the testatrix "did not sign said will in the presence of said witnesses, nor declare or acknowledge to them, or either of them, that it was her will or that she had subscribed said

will'' and that ''said paper was folded so that the signature thereon, if any, could not be seen'' by the witnesses. The Supreme Court, at page 625, said: ''These formalities cannot be waived or disregarded.'' And at page 626: ''The trial court gave credit to this testimony and made specific findings in accordance with it. The facts so established and the specific findings admitted of no other conclusion than that the will was not executed in accordance with the requirements of law.'' In our opinion, the Krause decision was reversed because the findings in accordance with the testimony of the witnesses did not support the order admitting the will to probate. The rule of the Pitcairn decision, *supra,* is not changed in any way by the Krause decision. Nor is the rule stated in the Krause case of any assistance in the instant action where the findings are in accordance with the presumption of due execution and fully support the order admitting the will to probate.

Counsel for appellant in preparation of his closing brief and for the oral argument were not the attorneys who tried the case and prepared the opening brief. In his attempt to show error on the part of the court in finding the execution, additional California decisions are cited in the closing brief— *Estate of Norswing,* 47 Cal.App.2d 730 [118 P.2d 858]; *Estate of Clark,* 93 Cal.App.2d 110 [208 P.2d 737]; —and *Estate of Pelton, supra.* We find nothing in those decisions contrary to the rules of law already discussed herein.

In his closing brief appellant also states that ''the alleged will being at most a direction to write a will in the future is probably not a will at all,'' and in this connection he cites the following decisions: *Estate of Beebee,* 118 Cal. App.2d 851 [258 P.2d 1101]; *Estate of Pagel,* 52 Cal.App.2d 38 [125 P.2d 853]; and *Estate of Kisling,* 68 Cal.App.2d 163 [156 P.2d 57].

In each of the last three cited cases, documents were denied probate. In each the document was in the form of a letter— not a will. None of said letters were signed by any witnesses. The letter in the *Estate of Pagel, supra,* expressed the hope that the hospital, to which it was addressed, would put its attorney at decedent's disposal ''to make such a last will and testament.'' The letter in *Estate of Kisling, supra,* was written to an attorney telling him to ''come in and make out a new will . . . come early as its convenient . . .'' The letter in the *Estate of Beebee, supra,* is written to the banker who held decedent's will and includes the sentence—''So

please do what is necessary under the circumstances, whether by codicile or a new will.''

■ Appellate courts are not bound by the trial court's interpretation of a writing. (*Estate of Platt,* 21 Cal.2d 343 [131 P.2d 825].) However, as did the trial court in the instant action, we view the language in the instrument now engaging our attention as testamentary in character and the words included therein—''I wish my mother to write my last will and testament''—as merely explaining the fact that the document is in the mother's handwriting and not that of the testatrix, who was ill, or at least had a ''shaking'' hand.

■ ''Mere weakness in the proof that a will is valid does not constitute affirmative evidence that it is invalid. A contestant's case must be judged independently, and must be found to have sufficient strength to justify a finding in his favor before the proponent is called upon to produce any proof. (*Estate of Stone* (1943), 59 Cal.App.2d 263, 268 [138 P.2d 710]; *Estate of Latour* (1903), 140 Cal. 414, 420 [73 P. 1070, 74 P. 441]; *Estate of Relph* (1923), 192 Cal. 451, 458 [221 P. 361].)'' (*Estate of Johanson,* 62 Cal.App. 2d 41, 55 [144 P.2d 72].)

The judgment and order are affirmed.

Fourt, J., and Drapeau, J. pro tem.,* concurred.

A petition for a rehearing was denied September 25, 1957, and appellant's petition for a hearing by the Supreme Court was denied October 30, 1957.

---

*Assigned by Chairman of Judicial Council.